# EXHIBIT B

CAUSE NO. 2019-77381

| | | |
|---|---|---|
| DAVID COOK, | § | IN THE DISTRICT |
| *Plaintiff*, | § | COURT |
| | § | |
| | § | HARRIS      COUNTY, |
| v. | | TEXAS |
| | § | |
| ROWAN COMPANIES, | § | |
| INC. a/k/a ROWAN | § | |
| DRILLING and ROWAN | § | |
| DRILLING (UK) LIMITED, | § | |
| *Defendants*. | | 113th JUDICIAL DISTRICT |

## **DECLARATION OF KAY MACDONALD SPRINGHAM, Q.C.**

My name is Kay Macdonald Springham, I am over twenty-one (21) years of age, I am of sound mind, and I am otherwise competent to testify as to every statement contained in this Declaration.

I am an Advocate practising law in Scotland. I called to the Bar in 1999 and was appointed Queen's Counsel in 2016. My areas of expertise are reparation (personal injury), clinical negligence, and public law. Further details of my career can be found in the attached CV.

I have been asked to consider the application of Scots law and procedure in the event this claim was brought before the Scottish Courts. All facts stated in this affidavit are based upon my personal knowledge, training, and experience.

Prior to signing this Declaration, I have reviewed the allegations in the plaintiff's, Mr David Cook's, Petition. I have also seen the following documents:-

1. Medical report by Mr Adepapo dated 15 February 2019
2. Letter from Doyle Trial Lawyers to BTO Solicitors dated 25 April 2019
3. Certificates from the Compensation Recovery Unit dated 8 November 2019 and 17 March 2020
4. Reports from Mr Kenneth G McCoin dated 20 March and 19 April 2019
5. Purchase Order from Rowan Drilling (UK) Ltd dated 30 March 2018
6.  Public records available from the UK Companies House website.


## **The Parties**

The petition discloses that Mr Cook, Rowan Companies Inc. and Rowan Drilling

(UK) Limited are parties to the ongoing litigation.

I have no knowledge as to the domicile of Rowan Companies Inc.. That is not significant to its falling within Scottish jurisdiction.

Companies House records show that Rowan Drilling (UK) Limited was incorporated on 7 March 1977 with company number SC061864, and with its registered office at 6 Queens Road, Aberdeen, Scotland, AB15 4ZT, United Kingdom.

I understand that two other corporate entities are potentially involved in this case; Stowen Ltd and DC Tuning Engineering Services Ltd. I understand that Stowen Ltd was the employment agency supplying services to Rowan Drilling (UK) Ltd and who contracted with Mr Cook. I am advised that Mr Cook was an employee of DC Tuning Engineering Services Ltd at the time of the accident.

Companies House records show that Stowen Ltd was incorporated on 2 October 2014 with company number 09245515, and with its registered office at Unit 1 James Watt Close, Gapton Hall Industrial Estate, Great Yarmouth, Norfolk, NR31 0NX.

In respect of DC Tuning Engineering Services Ltd the records show that it was incorporated on 6 January 2012 with company number 07900503, and with its registered office at 76 Briardene Way, Backworth, Newcastle Upon Tyne, England, NE27 0XQ. Mr Cook is the sole director and principal shareholder.

Incorporated companies have legal personality in the UK.

According to the petition Mr Cook is a UK citizen and I understand that he currently resides in England.

## Jurisdiction, Choice of Court and Choice of Law

I understand that the parties are agreed that the accident which is the subject of the petition took place whilst the Gorilla VII platform was in dock in Dundee harbour, Scotland. Actions in Scotland for personal injuries are brought either in the courts for the place where the harmful event occurred, or in the courts for the place where the defender is 'domiciled'.[1]

Jurisdiction to found proceedings by Mr Cook would be available in Scotland against Rowan Drilling (UK) Limited, by reason of its domicile. Jurisdiction

---

[1] See Schedule 8 of the Civil Jurisdiction and Judgments Act 1982.

against Stowen Limited, D C Tuning Engineering Services Limited and Rowan Companies Inc. would be available in the same proceedings as co-defenders.[2]

Further jurisdiction to found proceedings by Mr Cook would also be available in Scotland against Rowan Companies Inc., Rowan Drilling (UK) Limited, Stowen Limited and D C Tuning Engineering Services Limited by reason of the harmful event having occurred there.[3]

That would give Mr Cook the choice of four different courts in which to raise his case; the Sheriff Court in Dundee (where the accident happened), the Sheriff Court in Aberdeen (where Rowan Drilling (UK) Ltd is domiciled); the All-Scotland Sheriff Personal Injury Court, or the Court of Session, both of which sit in Edinburgh. Both the All-Scotland Sheriff Personal Injury Court and the Court of Session have Scotland wide jurisdiction.

All actions valued at less than £100,000 must be raised in the Sheriff Courts.[4] In the petition Mr Cook seeks more than $1,000,000 US Dollars. Whilst that figure will have been assessed with reference to the law of Texas, having regard to the injuries sustained by Mr Cook, it appears that his claim will have a value in excess of £100,000. As such I would expect that he would raise his case in the Court of Session which is the highest civil court in Scotland. It would be unusual for cases of this value to be heard in the Sheriff Court. In any event, the courts mentioned above have similar powers and follow similar procedures in personal injury actions.

I note that in the Petition Mr Cook seeks to have his case heard by a jury. In both the Court of Session and the All-Scotland Sheriff Personal Injury Court, Mr Cook would have the option of having his case tried by a jury. [5]

Section 11 of the Private International Law (Miscellaneous Provisions) Act 1995 provides that:- "The general rule is that the applicable law is the law of the country in which the events constituting the tort or delict in question occur". As Mr Cook's accident occurred in Dundee in Scotland, the applicable law would be Scots law.

It does not matter, in my view, that the accident occurred on a rig while tied up in harbour. In relation to accidents on ships, the Scottish courts have made clear that the place of the delict is the country having the territorial waters within

---

[2] Civil Jurisdiction and Judgments Act 1982 Schedule 8 paragraph 2 (o) (i).
[3] Civil Jurisdiction and Judgments Act 1982 Schedule 8 paragraph 2 (c) and Schedule 4 paragraph 3 (c)
[4] S.39 Court Reform (Scotland) Act 2014.
[5] S.63-71- of the Court Reform (Scotland) Act 2014.

which the ship was at the relevant time, and that "it matters not a whit whether the vessel was navigating or at anchor, in a roadstead or tied up to a quay…"[6]

Section 12 of the 1995 Act provides that the general rule may be displaced in certain circumstances.[7] From the information available to me, I can see no basis for the general rule being displaced.

The court may also wish to note that in Scots law there is a general presumption that foreign law coincides with Scots law. If a party maintains that foreign law applies and that it differs from Scots law, he must aver and prove what that foreign law is.[8]

Given the terms of the Private International Law (Miscellaneous Provisions) Act 1995, in particular section 11, any business operating in Scotland would expect Scots law to apply in the event of an accident occurring in Scotland.


### **The Court of Session & Procedure**

The Court of Session has developed a specialist set of rules for personal injury cases in order that they be dealt with as efficiently as possible.[9] A personal injury case is initiated by a Summons. Between 21 days and 3 months after service the pursuer (plaintiff) lodges the summons for calling. At this stage the defender or defenders have 3 days in which to enter appearance and 7 days to lodge defences.

On the lodging of defences the court issues a timetable which regulates further procedure.[10] This includes a notional date for proof (a trial by judge alone) or jury

---

[6] MacKinnon v Iberia Shipping Co. Ltd. 1955 SC 20 at p.30 (Ld Carmont). See also Saldanha v Fulton Navigation Inc. 2011 EWHC 1118 (Admlty).

[7] Section 12 of the Private International Law (Miscellaneous Provisions) Act 1995 provides as follows:-
    (1) If it appears, in all the circumstances, from a comparison of—
        (a)  the significance of the factors which connect a tort or delict with the country whose law would be the applicable law under the general rule; and
        (b)  the significance of any factors connecting the tort or delict with another country,
that it is substantially more appropriate for the applicable law for determining the issues arising in the case, or any of those issues, to be the law of the other country, the general rule is displaced and the applicable law for determining those issues or that issue (as the case may be) is the law of that other country.
(2)  The factors that may be taken into account as connecting a tort or delict with a country for the purposes of this section include, in particular, factors relating to the parties, to any of the events which constitute the tort or delict in question or to any of the circumstances or consequences of those events

[8] See Anton's Private International Law, 3rd. ed, Ch. 27.

[9] Chapter 43 of the Act of Sederunt (Rules of the Court of Session 1994) 1994 (as amended), the equivalent Sheriff Court Rules are found in Chapter 36 of the Ordinary Cause Rules 1993.

[10] Details of the timetable and dates can be found in Practice Note No.3 of 2003: Personal injuries actions.

trial. As most personal injury business is now dealt with in the Sheriff Courts substantive hearings are heard relatively quickly in the Court of Session. For most cases requiring 4 days or less that date will usually be within 7-12 months of defences being lodged. That can be at a later date if more than 4 days is required.

The parties are required to hold a joint meeting to discuss settlement at least 21 days from the proof or trial date. If parties are in a position to discuss settlement, they may arrange the meeting well in advance of any proof or trial.

The timetable dates may be varied by the court at the request of the parties, if required. For instance, if medical reports are needed but cannot be obtained within the timetable dates initially prescribed.

Mode of enquiry

Most civil cases before the Scottish Courts are decided by a single Judge, or Sheriff, hearing the evidence at a proof. However, personal injury cases are "enumerated" meaning the pursuer has a right to have their case determined by a jury in the Court of Session. [11] The right to a jury in the All-Scotland Sheriff Personal Injury Court is guaranteed by statute.

The only grounds in which a jury trial can be avoided is by agreement between the parties or on "special cause". [12]

Usually, it is the pursuer who wishes a jury trial and the defender who wishes to have the case heard before a judge. It is for the party objecting to a jury trial to show "special cause" why the case is unsuitable for jury trial. There must be some real ground of substance, not a mere hypothetical difficulty. [13] Each case depends on its own facts and circumstances and it is ultimately a matter of discretion for the judge determining the question. It is difficult to persuade a court that there is special cause for withholding the case from a jury. My impression is that over my time at the Bar, there has been an increasing trend of rejecting arguments that a case is not suitable to be heard by a jury.

The following are simply examples of cases where the court has had to consider the suitability of a case for jury trial. That a jury required to apply the Ogden tables in calculating future loss (discussed in more detail below) failed to constitute special cause. [14] To be successful a defender will usually need to identify an issue of particular complexity or difficulty such as where there was a claim for

---

[11] One exception being cases which fall under s.17(2)(b) of the Prescription and Limitation (Scotland) Act 1973.
[12] S.9(b) Court of Session Act 1988.
[13] Graham v Paterson & Son 1933 SC 119 – see LJC Aitchison at p.127.
[14] *Joseph Glen v Lagwell Insulation* [2017] CSOH 153.

solatium, past and future loss of earnings, past and future services, loss of pension rights, accommodation expenses, the cost of fertility treatment, the purchase and renewal of specialist equipment, the cost of 24-hour specialist nursing care, and the appointment of a care manager.[15] Or in relation to the Ogden tables where there was a multiplicity of different calculations including the possibility of a split multiplier as a result of potential promotion, difficulties with contingencies other than mortality, problems with job security and future employment.[16]

The decision of whether to seek a jury trial or not is taken at around 10 weeks into the timetable when the pursuer will move the court to fix further procedure. The motion is for the court to allow issues and subsequently approve the issues for the jury.[17] The "issues" are questions which the pursuer wishes the jury to answer at the conclusion of the trial.

The issues for the pursuer will generally be whether liability attaches under common law and/or statute, and the value of any award of damages broken down by head of claim.

The defender also has the opportunity to put a counter issue to the jury. This usually relates to contributory negligence or, where applicable, that it was not reasonably practicable to have instituted a system to prevent the accident.

The jury members are selected from the list kept by the sheriff clerk of the Sheriffdom of Lothian and Borders of persons living there.

At a jury trial, the jury are masters of fact and have sole responsibility for answering the issues which have been put to them. They are guided in that role by speeches from the counsel representing each of the parties and by directions from the trial judge.

The way those speeches and direction are approached will vary from case to case and depend on the heads of claim and basis of liability. However, the way in which the court directs the jury in regards to non-pecuniary losses i.e. damages arising from the death of a family member or, as in this case, pain and suffering as a result of direct injury (known as solatium) has been the subject of court guidance in order to narrow the disparity between awards made by judges sitting alone and juries.[18]

---

[15] *Easdon v A Clarke & Co (Smithwick) Ltd* 2006 G.W.D. 19-394.

[16] *Macdonald v Mallan* 2008 G.W.D. 4-61.

[17] The procedure is governed by Chapter 37 of the Act of Sederunt (Rules of the Court of Session 1994) 1994 (as amended).

[18] The Inner House of the Court of Session sitting as a bench of five judges in *Hamilton v Ferguson Transport (Spean Bridge) Ltd* 2012 S.C. 486.

In the past, juries would be given no guidance at all (other than the total sum sued for) as to what to award. Now, the judge will give the jury an indication of a range of awards for the non-pecuniary losses, such as solatium. The range suggested by the judge is not binding on them and the jury can award higher or lower amounts. I describe below the process by which a judge alone or counsel would approach the valuation of solatium.

An illustrative direction to the jury on this issue is as follows;

> "I cannot tell you what to award as the question is for you, not me. What I can do is give you as guidance, which is not binding on you, a range of figures that you may care to consider. I emphasise again though that it is for you to decide. You are perfectly entitled, if you think it right to do so, to choose a figure outside the range that I will mention. What I am about to say is just non-binding guidance. It is not a direction in law that you must accept; you can reject it if you want. I can only go by my knowledge and experience of trends of awards that have been given in the courts here in cases that might be regarded as being in some ways similar to the present one, having regard both to awards by judges and awards by juries, and also to published judicial guidelines. Of course, it goes without saying that no two cases are exactly the same, and that in every case there will be factors which increase the appropriate award and factors that reduce it. I have not included in the range every single case; rather I have looked to see if patterns emerge from cases to show the sort of amounts that have been awarded in cases dealt with by courts here. I have discarded some awards which seem to me to fall outside the identified patterns and the relevant judicial guidance."[19]

Recovery of Documents

As Mr Cook's accident occurred in Scotland and he resides in England, the majority of any documentation is likely to be held in either of those jurisdictions. In a case such as this, the relevant documents are likely to comprise:- hospital records; General Practitioner records; Inland Revenue records; Mr Cook's own business records. The party whose records they are, i.e. in this case, Mr Cook, can usually recover these records by signing a mandate authorising their release.

If for some reason, the records cannot be recovered by Mr Cook using a mandate, or if another party wishes to recover records, the Court of Session has power to compel parties, or others who hold relevant documents, referred to as havers to

---

[19] *Bridges v Alpha Insurance* [2016] CSOH 114- given by Lord Tyre.

produce them. [20] The party seeking recovery moves the court to grant "Commission and Diligence" for recovery of documents detailed in a Specification of Documents.

If a court order is granted, the practice is to serve it and the Specification on the haver for the documents to be produced voluntarily. The alternative is to hold a commission where the haver, or a representative, are cited to appear and to provide any documents, and answer questions in respect of them in front of a Commissioner. That is a formal procedure and rarely invoked unless the haver fails to respond or if there is doubt that all the documents called for have been produced.

To be compellable to attend a commission the haver must be resident in Scotland. In practice the court does grant commission and diligence for havers outside Scotland, but if they fail to respond to service of the specification and order then there is no recourse for the party but to proceed by letters of request. [21] For documents held in England these will be recoverable by letters of request.

The power to recover documents applies to the Crown, for example the Department of Work and Pensions[22] or Her Majesty's Revenue and Customs.[23] A document or property may only be withheld by the Crown on the ground that its disclosure would be injurious to the public interest or if the existence of a document or property shall not be disclosed if in the opinion of a Minister of the Crown it would be injurious to the public interest to disclose the existence of it.[24] Those exceptions will not apply to any documents recovery of which is likely to be sought in this case.

Citation of Witnesses to attend proof/trial

I understand from my instructing solicitors that the principal witnesses in this case reside within Scotland or the other nations of the United Kingdom. An expert medical report has been prepared by a Consultant orthopaedic surgeon (Mr Adedapo) based in Middlesbrough, England. He examined Mr Cook in February 2019. Unless his evidence is agreed, Mr Adepapo would require to give evidence in court.

---

[20] The process is covered by Chapter 35 of the Act of Sederunt (Rules of the Court of Session 1994) 1994 (as amended).
[21] Rule 35.15 Act of Sederunt (Rules of the Court of Session 1994) 1994 (as amended).
[22] They would hold details of any benefit applications made by the pursuer.
[23] They hold all earnings information for those paying tax within the UK.
[24] See S.47 of the Crown Proceedings Act 1947 and S.1(4) of the  1972.

It is up to each party to cite the witnesses they require for proof or jury trial.[25] Citations to witnesses in Scotland are sent either by recorded delivery post or served by messengers-at-arms. If the witness fails to attend and the citation has been properly executed the judge may grant a warrant for messengers-at-arms to apprehend the witness and bring them to the proof.

Witnesses in the rest of the United Kingdom and the Republic of Ireland can be cited in terms of the Attendance of Witnesses Act 1854. If a witness is cited under that Act and fails to appear, and the requirements of the Act have been met[26], a request can be made to the Supreme Court in the jurisdiction in which the witness resides for them to be punished although they cannot otherwise be forced to attend proof.

Burden and standard of proof

It is for the pursuer to prove his case.

The standard of proof in civil cases in Scotland is the "balance of probabilities" which can be described as the thing "being more likely than not".

There are certain circumstances where the burden of proof shifts to the defender, but none appear to be apply here.

If the defender requires to prove anything at proof/trial, such as contributory negligence or that they had taken all practicable steps to avoid the accident, the standard of proof is the balance of probabilities.

Recovery of legal fees

The general rule is that expenses (lawyers' fees and outlays, including fees to experts) follow success. Therefore, if the pursuer succeeds in obtaining damages, even if subject to a deduction, then the presumption is that he is entitled to an award of expenses. The same rule would apply if the defender were successful in repudiating the claim.[27]

---

[25] Citation of witnesses for both forms of enquiry are covered by Rule 36.2 of the Act of Sederunt (Rules of the Court of Session 1994) 1994 (as amended).

[26] Payment of the witnesses' travel expenses is required.

[27] This general rule is due to change later this year with the coming into force of the provisions of the Civil Litigation (Expenses and Group Proceedings) (Scotland) Act 2018 which means that a defender will not be entitled to their expenses even if successful in defending a claim unless there is fraud or another specified exception applies.

Recoverable expenses are by default calculated by reference to a table which is mandated by the court.[28]

However, an award of expenses is at the discretion of the court and can be subject to deductions and/or calculated by reference to the fees actually charged to the client as justice demands in each individual case.

The actual amount due to be paid by any party found liable in expenses is calculated by the Auditor of Court, if parties are unable to agree on the amount due.

### Scots law in general

Scotland has its own distinct legal system and laws. Scots law has its origins in Roman civil law rather than the common law practised in England and Wales. Scots law therefore refers to delict as opposed to tort. However, in this type of case, there is unlikely to be any difference between the approach which the Scottish courts would take to liability and that which the courts of England and Wales would take. Likewise, the calculation of damages is likely to be very similar.

### Determination of liability

In his petition Mr Cook seeks to establish liability against the defendants on the grounds of negligence, unseaworthiness and gross negligence. Exemplary damages are sought as a result of the latter. Scots law does not recognise either the concepts of gross negligence or exemplary damages.

In Scots law there is no recognition of a degree of negligence; a person is either negligent or not negligent. It is possible that gross negligence, by its nature, may be easier to prove than simple negligence.

Having looked at the allegations in the petition I have noted below the issues I consider a Scottish Court would contemplate when deciding whether liability was established.

Liability between defenders and other parties

The petition proceeds against two corporate entities. I have noted above that there are other corporate entities which might possibly have some liability.

---

[28] Act of Sederunt (Taxation of Judicial Expenses Rules) 2019.

Under Scots law liability for damages relating to delictual liability is joint and several.[29]  The pursuer can choose against whom they direct an action for damages and as long as that party is partly responsible for having caused the injury, the full award can be obtained from them.

If multiple defenders are sued liability can be apportioned between them in terms of section 3 of the Law Reform (Miscellaneous Provisions) (Scotland) Act 1940. However, this only affects recovery of sums between the defenders and their joint and several liability to the pursuer remains unaffected. The Act also allows defenders to seek a contribution from parties who were not part of the action with the pursuer up to two years from the date of an award in the pursuer's favour.

If a defender considers that a party who has not been sued is liable to the pursuer, or that there is a party which is contractually obliged to indemnify the defender, the defender can bring that party into the action to have all issues determined at the same time.[30]

Common Law

At common law to determine liability the court will require to answer three questions; (1) whether a duty of care exists between the pursuer and defender; (2) whether there was a breach of that duty; and (3) whether that breach resulted in the injury complained of by the pursuer. All three must be answered positively for liability to attach.

The first question is unlikely to be at issue in this case as Mr Cook was a worker on the platform and there is a close relationship between him and Rowan Drilling (UK) Limited in respect that he was on the platform at their request.

The second question considers whether the defender has taken reasonable care for the pursuer. The standard against which that is judged is the reasonable person. Liability can be established if it is demonstrated that the defender failed to exercise such care as was reasonable in the circumstances.  In determining that, the court will have regard to the likelihood of the event occurring and the potential harm that would be caused if it did occur. The degree of care necessary will vary according to the circumstances; more care being required where there is greater risk. A defender will only be liable for the consequences of his actions which a reasonable person would have had in contemplation. These are

---

[29] The only exception to this general rule is cases in respect of some industrial diseases which do not apply in this case.

[30] This is by way of Third Party Notice under Chapter 26 of the Act of Sederunt (Rules of the Court of Session 1994) 1994 (as amended). There may be other reasons for bringing in a third party.

fundamental principles of liability in delict, which were set out in the important Scottish cases of Donoghue v Stevenson and Muir v Glasgow Corporation.[31]

The answer to the third question will depend on the issues and any breach identified in the second. The pursuer must establish that any breach of duty resulted in, or materially contributed to, his injuries. For instance, there could be a technical breach of duty, but if that would not have caused the accident then no liability would attach.

Statutory Liability

There are three statutes which may be relevant to liability, first the Merchant Shipping Act 1995 and regulations made thereunder, second the regulations made under the Health and Safety at Work etc Act 1974, and third the Occupiers' Liability (Scotland) Act 1960.

*Merchant Shipping Act 1995*

The application of this statute and regulations made thereunder depends on whether the Gorilla VII can be defined as a 'ship' in terms of section 313 of the Merchant Shipping Act 1995. I offer no view on that. However, I note that Mr Cook does states in his petition that the Gorilla VII is a vessel so it is possible that this statute and regulations made under it may be relevant.

It is for the pursuer to identify the parts of this Act on which he would seek to found liability. However, the following regulations made under the Act may be relevant to the circumstances of Mr Cook's accident.

The Merchant Shipping and Fishing Vessels (Health and Safety at Work) Regulations 1997 (S.I. 1997/2962) apply to all activities of workers on ships, subject to certain exceptions.[32] They impose duties on an employer and anyone having control of relevant matters.[33] Regulation 5 sets out the general duties of employers, including the duty to 'ensure the health and safety of workers and other persons so far as is reasonably practicable...' Regulation 7 requires a 'suitable and sufficient assessment' to be made of the risks to the health and safety of workers and other persons on board ship.

---

[31] Donoghue v Stevenson 1932 SC (HL) 31, especially the seminal speech of Lord Atkin; and Muir v Glasgow Corporation 1932 SC (HL) 3, the speech of Lord Macmillan.
[32] Reg. 3.
[33] Reg. 4.

The 1997 Regulations impose civil as well as criminal liability.[34] That has not been affected by the Enterprise and Regulatory Reform Act 2013, mentioned below.

### Health and Safety at Work etc. Act 1974

This Act, and the Regulations made under it, form the majority of the UK's rules regarding health and safety at work. Until 2013 breach of the myriad of Regulations made under the Act imposed civil liability. In general, the Regulations imposed a higher standard of care than that at common law. Many personal injury cases were based almost exclusively on breach of particular Regulations.

Section 69 of the Enterprise and Regulatory Reform Act 2013 removed the right to found on a breach of Regulations made under the 1974 Act (and certain other Acts). However, it is recognised by the courts that the Regulations continue to inform the standard of care at common law.[35]

The Approved Codes of Practice and guidance which are issued by the Health and Safety Executive[36] under the Act also inform the standard of care.

It would be for the pursuer to state which Regulations he considers had been breached by the defender. In the circumstances of this case, the duties imposed under the Workplace (Health, Safety and Welfare) Regulations 1992 may be relevant.

### Occupiers' Liability (Scotland) Act 1960

Section 2(1) of this Act provides that:

> "The care which an occupier of premises is required, by reason of his occupation or control of the premises, to show towards a person entering thereon in respect of dangers which are due to the state of the premises or to anything done or omitted to be done on them and for which the occupier is in law responsible shall, except in so far as he is entitled to and does extend, restrict, modify or exclude by agreement his obligations towards that person, be such care as in all the circumstances of the case is reasonable to see that that person will not suffer injury or damage by reason of any such danger."

---

[34] *Cairns v Northern Lighthouse Board* 2013 S.L.T. 645.

[35] See, for example, Gilchrist v Asda Stores Ltd [2015] CSOH 77; Dehenes v T Bourne & Son 2019 SLT (Sh Ct) 219.

[36] The statutory body charged with investigating workplace accidents.

This duty extends to the occupier of a 'vessel'.[37] An occupier is defined as the person who occupies or controls land or premises.[38] The test is possession and control which is a matter of fact. The duty is that which is reasonable in the circumstances and is therefore similar to the common law duty of care discussed above.

As noted in respect of the position under common law even if there is a breach of the 1960 Act, the pursuer still requires to establish that but for that breach, his injury would not have occurred or that the breach materially contributed to the injury.


Contributory negligence

The defender can, where the facts support it, argue that the pursuer caused or materially contributed to the accident happening due to his own fault and negligence. The burden of proof is on the defender to establish negligence on the part of the pursuer which is causally related to the resulting injury. If contributory negligence is established, the damages awarded to the pursuer will be reduced by the percentage attributed by the court to the pursuer's fault.

In deciding the level of any reduction, the court has regard to the relative blameworthiness of the defender and pursuer's conduct as well as its causal potency to the resultant injury.[39]

There have been cases where deductions of 80% have been made. In claims by employees against their employers (which is not the situation here), findings of contributory negligence tend to be much lower and do not usually exceed 50%.


**Determination of quantum**

In an action for personal injuries in Scotland the pursuer can claim damages for any head of claim which is causally related to the breach of duty on the part of the defender in question, which is reasonably foreseeable and not too remote. Therefore, there is no definitive list detailing the heads of claim which may be recovered. In Mr Cook's petition he indicates that he seeks compensation in respect of bodily injury and resultant pain and suffering, past and future loss of earnings, and medical treatment. I have seen a letter of demand from Mr Cook's

---

[37] S.1(3)(a) of the Occupiers' Liability (Scotland) Act 1960. In Clark v Maersk Co Ltd 2010 SLT (Sh Ct) 9 the owners of an offshore installation accepted that it constituted premises within the meaning of the 1960 Act.
[38] S.1(1) of the Occupiers' Liability (Scotland) Act 1960.
[39] Jackson v Murray & Anr [2015] UKSC 5.

attorneys which suggests that he also has a claim in respect of care provided by his wife and the care he can no longer provide for his children. This is also mentioned in the reports by Mr McCoin.

All of these heads of claim are recoverable under Scots law and below I illustrate how a Scottish court would approach the valuation of each head. In a jury trial, as already mentioned, the amount awarded would be wholly within the jury's power but the process below would inform the guidance given to the jury by the trial judge.

In a typical personal injuries case such as this I would expect the following heads of claim:-

- Solatium (pain and suffering)
- Loss of earnings – past and future
- Services – past and future
- Expenses – such as medical treatment, and other outlays

In regards to recoverable losses the pursuer is under a duty to mitigate his losses. A failure to do so could lead to a reduction in damages awarded.


Solatium

This head of claim covers pain and suffering sustained by a pursuer as a result of his injuries. The aim of an award is, as much as it is able, to put the pursuer back in the position he was in but for the injury.

I note from the petition that Mr Cook refers to emotional distress and anxiety. It is unclear whether he has received any treatment for such symptoms or whether they amount to a recognised psychiatric condition (in terms of the Diagnostic and Statistical Manual of Mental Disorders or the International Classification of Diseases). If he is found to be suffering from a recognised psychiatric condition, damages can also be awarded for that condition. If he is not suffering from a recognised psychiatric condition, but has some emotional distress and/or anxiety, that may be taken into account in the award of compensation though it is unlikely to increase the sum substantially.

In assessing the value of the claim for solatium, the courts will have regard to previous awards (by judges and by juries) in similar cases (in both Scotland and England), and to the Judicial College Guidelines. The Guidelines contain suggested ranges of compensation for different types of injury.

By way of example, the Guidelines suggest the following in respect of severe leg injuries:

**(b) Severe Leg Injuries**

| | |
|---|---|
| **(i)** The Most Serious Injuries Short of Amputation | **£82,110 to £115,940** |

Some injuries, although not involving amputation, are so severe that the courts have awarded damages at a similar level. Such injuries would include extensive degloving of the leg, where there is gross shortening of the leg, or where fractures have not united and extensive bone grafting has been undertaken.

| | |
|---|---|
| **(ii)** Very Serious | **£46,780 to £77,040** |

Injuries leading to permanent problems with mobility, the need for crutches or mobility aids for the remainder of the injured person's life; injuries where multiple fractures have taken years to heal, required extensive treatment, and have led to serious deformity and limitation of movement, or where arthritis has developed in a joint so that further surgical treatment is likely.

| | |
|---|---|
| **(iii)** Serious | **£33,450 to £46,780** |

Serious compound or comminuted fractures or injuries to joints or ligaments resulting in instability, prolonged treatment, a lengthy period of non-weight-bearing, the near certainty that arthritis will ensue; extensive scarring. To justify an award within this bracket a combination of such features will generally be necessary.

The judge would apply the facts of the case to the descriptions given in the Guidelines in an attempt to place the pursuer's injury within a particular bracket.

Once the court has decided the appropriate level of compensation for solatium, a portion of that amount will be attributed to the past to reflect the pain and suffering already experienced, and a portion to the future where there is continuing pain and suffering. It is common to apportion half of the amount of solatium to the past and half to the future where there is ongoing pain and suffering.

This is also important for assessing interest as this will only run on the past loss.

Loss of earnings – past and future

As already stated, Mr Cook claims for past and future loss of earnings. Past wage loss is calculated based on the amount which but for the accident the pursuer

16

would have earned, less any sums received since the accident. These calculations are carried out net of income tax and any other statutory deductions such as National Insurance contributions.

I do not have information on how Mr Cook was paid, other than that he appears to have been paid through his own company, DC Tuning Engineering Services Ltd. He will be entitled to claim for the loss of reward for his labour, not the loss of company profits or the diminution in value of goodwill. [40]

As regards, future loss of earnings, the court will first assess the appropriate multiplicand. i.e. the amount which as at the date of the court's assessment the pursuer could have been expected to be earning but for the accident. This may in appropriate cases take into account inflationary increases in earnings and/or promotion.

The court then decides the appropriate multiplier to apply. To determine the correct multiplier the court will have regard to the Ogden Tables produced by the UK Government Actuary's Department. These contain multipliers based on retirement at different ages. The multiplier is based on a rate of return which in Scotland is set at -0.75%. [41] The relevant multiplier is then reduced to take account of contingencies other than mortality (such as the risk of periods of non-employment and absence because of sickness).

The court will also take into account the pursuer's residual earning capacity. Usually the court will hear evidence from an employment expert familiar with the labour market in which the pursuer may hope to obtain alternative employment. The court will then carry out a similar exercise to establish what future earnings the pursuer is likely to receive in his injured state.

Ultimately, the calculation should arrive at a sum of money which will ensure the pursuer receives in today's money a lump sum to reflect what he would have earned but for the accident less what he will earn in his injured state.

In some circumstances, the court will award instead a lump sum for 'loss of employability'. [42] This is typically where the pursuer's future prior to the accident was uncertain and there are so many uncertainties that it is difficult to assess what his position would have been but for the accident.

---

[40] Fullemann v McInnes' Exrs' 1993 SLT 259.

[41] See he Damages (Investment Returns and Periodical Payments) (Scotland ) Act 2019

[42] It is possible to make an award for future loss of earnings **and** for loss of employability, but that is very unusual,

Services – past and future

Services is a broad category and covers care that a pursuer has received from relatives as a result of the injury (such as help with bathing or shopping) or tasks that he can no longer assist with (such as DIY or gardening).

These are recoverable under sections 8 and 9 of the Administration of Justice Act 1982.

Section 8 applies where services have been rendered to the pursuer by a relative.[43] If established the defender will be found liable to pay the pursuer a sum as represents reasonable payment for those services and any reasonable expenses incurred carrying them out. The payments for past services are held in trust by the pursuer for the relative who rendered them, although in practice they tend simply to form part of the overall award to the pursuer.

In terms of section 9, a defender is liable to pay to the pursuer a reasonable sum by way of damages for his inability to render personal services to his relatives. It is required that those services were or might have been expected to have been carried out by the pursuer, would ordinarily be obtainable for payment, and which the pursuer would have carried out without charge.

In assessing awards under this head, the court will usually have regard to the number of hours of work required by the relative or the pursuer with an appropriate hourly rate multiplied by that to obtain a total award. In cases where there are extensive services, a report may be obtained from a services expert. In more straightforward cases a broad brush approach may be taken and a lump sum awarded.

Awards for future loss of services are also regularly made. As with awards for future loss of earnings, the court will have regard to the Ogden Tables and select the appropriate multiplier from the Tables dealing with pecuniary losses for life. If the services claimed are relatively limited, a lump sum may simply be awarded.


Expenses - Medical Treatment and other outlays

The medical care provided by the National Health Service (NHS) throughout the UK is free at the point of delivery. There is private provision of health care, but they do not often, if at all, provide any emergency services. Therefore, there is often no loss for a pursuer to recover in this regard as there has been no payment.

---

[43] They may not be recoverable where the relative has expressly agreed, in the knowledge that an action for damages has been raised or is in contemplation, that no payment should be made.

The recovery of costs incurred by the NHS in treating the injured person is discussed in more depth below.

However, if a pursuer elects to seek private medical treatment which is reasonable[44] the court cannot take into account the availability of equivalent free provision within the NHS.[45] An award is therefore possible for past and future medical treatment.

To be successful in recovering sums for proposed future treatment the pursuer would require to prove that he would make use of private medical provision.

I am not aware of Mr Cook claiming that he has or will incur other outlays. In cases such as this, there may sometimes be claims for aids and adaptations, for example, if specialized footwear is required, or adaptations to cars or living accommodation is needed due to the nature of the disability. Such claims are usually dealt with in a report by an expert in care.

Judicial Interest

Judicial interest is payable on past losses.[46] The current rate is set at 8%. The award of interest is a matter of judicial discretion. The rate varies according to the type of loss and whether it is a continuing loss.  For example, in claims for past wage loss, where there is an ongoing loss, interest is usually awarded at 4% from the date of the accident.

If an award is made in favour of the pursuer then interest will run at 8% from the date of the award until payment.

**Recovery of the costs of NHS treatment and Welfare Benefits**

The costs associated with treating and paying benefits to those who suffer personal injury fall on the wrongdoer or their insurer (referred to as the compensator). The system for recovering these sums is administered by the Compensation Recovery Unit (CRU) which is part of the Department of Work and Pensions.

---

[44] Usually judged on whether it has been recommended by a medical professional or not.
[45] S.2(4) of the Law Reform (Personal Injuries) Act 1948.
[46] Interest on Damages (Scotland) Act 1958.

On receipt of a claim for injuries the compensator (usually the insurer of the defender) registers the case with the CRU which then investigates and issues a certificate detailing any recoverable benefits and NHS charges.

The obligation to make payment of the charges identified by the CRU applies where a compensation payment is made, whether voluntarily or under a court order. It applies where a payment is made in the UK or elsewhere.[47]

NHS Treatment

Charges are recoverable for hospital treatment and/or ambulance services provided to the pursuer.[48] Payment is made to the Secretary of State for treatment in England and Wales and the Scottish Ministers for treatment in Scotland.

The NHS is free at the point of delivery and for a UK citizen or other person entitled to the use of its services, no invoice or bill is produced for any treatment provided. Therefore, the charges which are recoverable are calculated by reference to the number of times the pursuer required an ambulance, and, if they attended or were admitted to hospital, the number of days they stayed there. These are fixed by Statutory Instrument on a year to year basis.

I have not seen an NHS certificate from the CRU, but I understand that Mr Cook required hospital treatment following the accident. The regulations in force at the time (8 April 2018) prescribed the amounts recoverable as £218 per ambulance trip, £688 per attendance at hospital increasing to £846 per day (or part day) if admitted. [49] The charges are capped at a maximum of £50,561. It is unclear whether Mr Cook received any recoverable NHS treatment in England and Wales, but there were equivalent regulations in force in that jurisdiction enforcing the same charges and cap.[50]

NHS charges can be reduced if there is a finding of contributory negligence. In such an event they are reduced by the same percentage as the finding.[51]

The charges become payable on the date the pursuer's damages are paid.[52] The charges are not off-settable against the damages awarded to the pursuer.

---

[47] S.150(4) of the Health and Social Care (Community Health and Standards) Act 2003 and S.1(3) of the Social Security (Recovery of Benefits) Act 1997,

[48] S.150 of the Health and Social Care (Community Health and Standards) Act 2003.

[49] Regulation 2K of the Personal Injuries (NHS Charges) (Amounts) (Scotland) Regulations 2006,

[50] Personal Injuries (NHS Charges) (Amounts) Regulations 2015,

[51] S. 153(3) of the Health and Social Care (Community Health and Standards) Act 2003, with the exception of cases which were ongoing at that time.

[52] S.154 of the Health and Social Care (Community Health and Standards) Act 2003,

Welfare benefits

The recovery of welfare benefits is governed by the Social Security (Recovery of Benefits) Act 1997 which applies to all cases where compensation is paid after 6 October 1997.[53]

The benefits recoverable are restricted to those which have been, or are likely to be, paid to the pursuer in respect of the accident, injury or disease[54] for the period of 5 years[55] following the accident[56] or to the date of payment in full discharge of the claim if before the expiry of that period.[57]

The recovery of welfare benefits is distinct from NHS charges in respect that some benefits can be offset against sums due to be paid to the pursuer for specific heads of claim. These are set out in Schedule 2 of the Act and cover payments in respect of past loss of earnings, the cost of care and loss of mobility. This requires the court, either the judge or jury, to specify the amount of damages payable for each head.[58] This exercise must be completed without taking into account the recoverable benefits and that includes the calculation of any interest.[59]

Given this practice it is unclear whether a court sitting outside the United Kingdom and applying their own law would, or could, carry out a similar exercise and whether off-set would be allowed should any judgment be enforced.

The amount of recoverable welfare benefits is not reduced if there is a finding of contributory negligence on the part of the pursuer.

I have had sight of a CRU certificate in relation to recoverable benefits paid to Mr Cook which covers payment in settlement of the case to 6 July 2020. It shows total recoverable benefits of £41,565.88 to that date split between Universal Credit (UC) (£29,118.80), Living component of Personal Independence Payment (PIPL) (£6,093.54), and Mobility component of Personal Independence Payment (PIPM) (£6,353.54). These benefits will continue to accrue after the 6 July 2020, according to the certificate at the rate of £840.79 per month for UC, £59.70 per week for PIPL and £62.25 per week for PIPM.

---

[53] S. 2 of the Social Security (Recovery of Benefits) Act 1997,
[54] S.1(1)(b) of the Social Security (Recovery of Benefits) Act 1997,
[55] S. 3(2) of the Social Security (Recovery of Benefits) Act 1997,
[56] Or 5 years from the date benefits are first claimed for a disease.
[57] S. 3(4) of the Social Security (Recovery of Benefits) Act 1997,
[58] S.15 of the Social Security (Recovery of Benefits) Act 1997,
[59] S.17 of the Social Security (Recovery of Benefits) Act 1997 & *Wisely v John Fulton (Plumbers) Ltd* 1998 SC 910,

21

The amounts paid to Mr Cook in respect of UC can be offset against any award for his past loss of earnings. So, if payment was made in respect of that head on 6 July 2020 it would be reduced by £29,118.80.

PIPL can only be offset against an award for cost of care and PIPM for an award of loss of mobility. Cost of care is unlikely to include an award for services, and in practice PIPL is not off-set against claims for services.[60] It would be off-settable against an award for the costs of supplying, for example, nursing care.  Loss of mobility has been suggested to include the cost of fares for journeys by bus or taxi which the pursuer would not have required to take but for the loss of mobility.[61]

Review of the benefits certificate is possible if the paying party considers that some or all of the benefits payable are not as a result of the accident.


This affidavit is provided for the assistance of the court and is not to be relied upon by any party other than the party instructing me to prepare the affidavit.


My name is Kay Macdonald Springham, I was born on 26th August 1964, and my business address is The Faculty of Advocates, Parliament House, Edinburgh EH1 1RF, Scotland, United Kingdom. I declare under the penalty of perjury that the foregoing is true and correct.

Executed in Glasgow, Scotland, United Kingdom, on the Fifth day of June, 2020.


_____

KAY SPRINGHAM QC

---

[60] *McManus's Executrix v. Babcock Energy Ltd* 1999 S.C. 569
[61] *Mitchell v. Laing* 1998 S.C. 342

**KAY SPRINGHAM Q.C. – CURRICULUM VITAE**

Year of Call: 1999
Year of silk: 2016

**APPOINTMENTS:**
Board member of the Scottish Legal Complaints Commission (2017 – date)
Legal chair of the Fitness to Practise Panel of the Scottish Social Services Council (2017 – date)
Member of the Panel of Preferred Counsel, Equality and Human Rights Commission (2011 – date)
Former Second Standing Junior to the Scottish Government (2013 - 2016)
Former Standing Junior to the Scottish Government (2005 – 2012)

**PRACTICE:**
I have been at the Bar for 21 years, and during that time have enjoyed the challenge of being instructed in a wide range of civil litigation. My principal fields of practice include:-
• Personal Injury
• Clinical/Professional Negligence
• Statutory Appeals
• Judicial Review
• Human Rights

I am regularly instructed for both sides in personal injury matters. My recent practice has included, for example, claims for serious head injuries and for catastrophic injuries, fatal claims, stress at work claims and accidents at work, including industrial diseases. I have conducted numerous proofs, debates and appeals, as well as having settled many personal injury cases.

In addition, I have experience in handling professional negligence cases, for example, involving lawyers, doctors, midwives, dentists, and architects. In the disciplinary context, I have advised on and represented solicitors in disciplinary matters, both before the Scottish Solicitors' Disciplinary Tribunal and the Inner House of the Court of Session. As a Board member of the Scottish Legal Complaints Commission, I determine the eligibility of complaints as well as chairing committees which decide on inadequate professional service complaints. I am a legal chair of the Fitness to Practice Panels of the Scottish Social Services Council (which regulates social workers and social care workers).

I have a long-standing interest in judicial review, statutory appeals and human rights matters. I have advised on and appeared in a variety of litigations in these areas. I have a post-graduate qualification in European human rights law. I was a Standing Junior to the Scottish Government from 2005, and have been instructed to represent the interests of the Scottish Ministers in a range of matters. In 2013 I was appointed as Second Standing Junior to the Scottish Government, an appointment which ended on my taking silk in 2016. In 2011 I was appointed to the Panel of Preferred Counsel for the Equality and Human Rights Commission, and was then re-appointed in 2015 (to their 'A' Panel).

A list of selected cases is appended.

**SELECTED CASES:**

**Reparation/personal injury**
- Anderson v Imrie [2018] CSOH 79; [2016] CSOH 171 – reclaiming motion following proof on liability and quantum – whether defenders were occupiers – whether defenders breached common law duty of care when child sustained head injury.
- Malone v Lord Advocate [2018] CSOH 86 – claim by former procurator fiscal alleging psychiatric illness caused through stress at work – debate on relevancy of pleadings.
- Grubb v Finlay – [2017] CSOH 81 – minor RTA allegedly causing chronic pain disorder – proof and motion to dismiss case on basis of 'fundamental dishonesty'.
- Hall-Craggs v RHASS and anor [2016] SLT 311 – motion for summary decree - whether there was the requisite identity of issues between first defenders' conviction and bases of liability in civil proceedings - Law Reform (Miscellaneous Provisions) (Scotland) Act 1968, section 10.
- David T Morrison Ltd v ICL 2014 SC (UKSC) 222 – whether action raised more than 5 years after explosion damaging property had prescribed – correct interpretation of s 11 (3) of the Prescription and Limitation (Scotland) Act 1973.
- ICL v Johnston Oils 2013 SLT 1090 & 2012 SLT 667 – commercial court action of relief, arising out of Stockline explosion; proof on liability; debate on relevancy of pleadings in action against LPG supplier.
- Santander UK Plc v Keeper of the Register of Sasines 2013 SLT 362 - whether decision by Keeper to accept an application to register discharge of standard security was justiciable - whether it would be fair, just and reasonable in the circumstances to impose a duty of care on the defender.

**Professional negligence and professional regulation**
- Khan v General Pharmaceutical Council [2016] UKSC 64 – appointed as *amicus curiae* – professional regulators' powers of sanction – whether it (or Inner House) had erred in law – whether sanction imposed was excessive and disproportionate.
- L v GGHB (2011) – settlement of claim for damages arising out of injuries sustained at birth (cerebral palsy); second case in Scotland to settle on basis of a periodic payment order.
- Atwal Enterprises Ltd v Toner 2006 SLT 537 – cause of defect in artificial football pitches - whether professional negligence on part of architect - assessment of damages.
- McMahon and others v Council of Law Society of Scotland 2002 SC 475 – appeal to the Inner House against the decision of the Scottish Solicitors' Disciplinary Tribunal on whether sentence excessive.

**Judicial review/ statutory appeals**
- AA, Petitioner [2018] CSOH 81 - judicial review of the failure of the UK government to give Employment Tribunals the power to grant diligence on the dependence – whether breach of EU principles of effectiveness and/or equivalence.
- Hunter v Scottish Ministers (2016 SLT 653) – age discrimination in system of maintenance loans in higher education - public sector equality duty under Equality Act 2010 – articles 1 and 2 of Protocol 1 with article 14, ECHR.
- Trump International Golf Club Sc Ltd v Scottish Ministers 2016 S.C. (U.K.S.C.) 25 - whether Scottish Ministers had no power under the Electricity Act 1989 to grant consent to windfarm application - whether condition of consent void for uncertainty.
- Gage v Scottish Ministers 2016 SLT 424 - whether the petitioner was entitled to declarator that it was unreasonable and therefore unlawful for respondents to detain him in conditions in which he was exposed to environmental tobacco smoke.
- BG v Mental Health Tribunal for Scotland and anor [2015] CSIH 18 – appeal against decision of

Tribunal to make a Compulsory Treatment Order. Whether Tribunal (& Sheriff Principal) had erred in law.


## Human rights

- O'Neill and Lauchlan v Scottish Ministers 2015 SLT 811 & 820 – judicial review petition where same-sex prisoners sought inter-prison visits – Articles 8 and 14 of the Convention – legality of prison rules.
- Johnstone v Scottish Ministers 2015 SLT 743 - Whether petitioner's continued detention in State Hospital ('SH') was in breach of his right under art. 3, ECHR not to be subjected to inhumane treatment or his right to liberty under art. 5 – whether 2003 Act was non-ECHR compliant because of absence of any provision allowing transfer of persons from SH to prison.
- Main v Scottish Ministers 2013 SLT 805 – judicial review petition challenging the Convention compatibility (article 8) of the amended sex offenders legislation.
- Apollo Engineering Ltd (in liquidation) v James Scott Ltd 2012 SC 282, and [2012] CSIH 88 (Inner House) – appointed as *amicus curiae* to advise on whether a company director/ shareholder was entitled under Art. 6 ECHR to represent pursuers in a stated case challenging an arbiter's award.
- NJ, Petitioner and ors 2013 SLT 347 - whether the refusal by the sheriff to allow a caveat to be lodged in relation to a child protection order engaged art. 6 ECHR - whether a failure to involve petitioners in the process for a CPO infringed their rights under art. 8 ECHR
- S v Mental Health Tribunal for Scotland and ors 2010 SLT 991 – appeal to Inner House against decision of MHTS refusing to make an order to return a patient to a medium secure facility. Appeal based on alleged violations of articles 5, 6, 8 and 14.
- PF (Linlithgow) v Watson 2002 SC (PC) 89 – Privy Council – article 6, ECHR and the right to a trial within a reasonable time in the context of criminal proceedings.


## Other areas

- Fatal Accident Inquiry Edinburgh Sheriff Court (2018) – representing the interests of the Scottish Ministers/Scottish Prison Service following the death of a prisoner while being restrained in prison.
- AF v RF [2017] SAC (Civ) 18 – appointed as *amicus curiae* – whether Sheriff erred in refusing proof in Minute seeking specific issue order – whether Sheriff acted in breach of article 6, ECHR.
- Lord Advocate v W (2016, Court of Session) – action of reduction of Sheriff's interlocutors – interim suspension of interlocutors and interim interdict against enforcement of interlocutors.
- Vale of Leven Hospital public inquiry – 2010 - 12 – representing the interests of Scottish Ministers in a public inquiry into the death/illness of patients who suffered from a hospital acquired infection (C. Diff).
- Cameron v Keeper of the Registers of Scotland Lands Tribunal for Scotland (22/12/11) – acting for the Keeper in an appeal against her decision to refuse to rectify the Register; whether there was an 'inaccuracy' on the Register.
- M v Scottish Ministers Mental Health Tribunal for Scotland, 2009 & 2010 – acting for SMs in two separate sets of hearings to determine whether a patient was properly diagnosed as suffering from Personality Disorder.

**EDUCATIONAL QUALIFICATIONS**

1996-97:- <u>Diplôme d'Études Approfondies</u>, Université Robert Schuman, Strasbourg
"La protection des droits de l'homme en Europe" - *'mention assez bien'*
Dissertation - "Le droit d'avoir l'assistance d'un avocat - l'article 6 de la Convention Européenne des Droits de l'Homme"-
(DEA is equivalent to an LL.M)

1985-86:- <u>Diploma in Legal Practice</u>, University of Glasgow

1981-85:- <u>Ll.B (Hons.) (Upper Second)</u>, University of Glasgow
Honours papers in Jurisprudence, European Law, and Law and Ethics.
Passes at Ordinary level in:- Civil Law, Company Law, Constitutional Law, Contracts, Conveyancing, Criminal Law, Delict, Evidence, Industrial Law, Jurisprudence, Mercantile, Persons, Property, Trusts and Succession, Public International Law, Scottish Legal System, Tax Law.
Pass at Advanced Level in International Private Law.

1976-81:- <u>Barrhead High School</u>, Barrhead, Renfrewshire
"H" Grades – "A" passes in English, Mathematics, Latin, French and German.
"O" Grades – "A" passes in English, Arithmetic, Mathematics, Latin, French, German, and History.

**EMPLOYMENT HISTORY**

1997 – 1998 <u>Scottish Human Rights Centre</u>
Research Officer - researching the impact of the European Convention on Human Rights on various areas of Scots law.

1990 – 1996 <u>Brechin Robb, Solicitors</u>
Litigation assistant/associate - specialising in civil court work, in particular, reparation actions. Pursuing/defending claims arising out of road traffic accidents, accidents in the workplace or in public places. Representing solicitors, surveyors and other professionals in professional negligence actions. Employment matters, contract disputes and other miscellaneous disputes.

1988 – 1990 <u>John Wilson and Co, Solicitors</u>
Litigation assistant - mainly civil, but also some criminal work. Main civil work areas were - contract disputes, reparation actions, employment matters, matrimonial disputes, sequestrations and liquidations. Criminal work - road traffic prosecutions, breaches of the peace, minor assaults and health and safety prosecutions.

1986 – 1988 <u>Strathclyde Regional Council</u>
Traineeship - commercial and domestic conveyancing, court work in both the Sheriff Court and the Court of Session. Advising departments of the Council.

**PUBLICATIONS AND SEMINARS:**

Chapter on "Property Law" in "A Practical Guide to Human Rights Law in Scotland", General Editor,

4

The Honourable Lord Reed.

"Article 6 Examined" in Human Rights and UK Practice, vol 1, Issue 1
"To Associate…or not to Associate – article 11 of the ECHR" in Human Rights and UK Practice, vol. 1, Issue 3
"State Immunity – "What a Pity!"" in Human Rights and UK Practice, Vol 3, issue 3
"Trespassing on Human Rights? The Scottish Parliament and land reform" 1999 SLT 227

I have also spoken at a number of conferences and seminars, primarily on human rights, public law and personal injury issues.

**PROFESSIONAL MEMBERSHIPS:**
Member of the Faculty of Advocates' Equality and Diversity Committee
Member of the Faculty of Advocates' Professional Negligence Group
Former member of Steering Group of the Scottish Public Law Group
Former member of the Faculty of Advocates' Disciplinary Investigating Committee
Former member of the Faculty of Advocates' Human Rights Committee
Former member of the Faculty of Advocates' Board of Assessors