# EXHIBIT D

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

### WORLDWIDE MASTER SERVICE AGREEMENT

### THIS AGREEMENT CONTAINS PROVISIONS
### RELATING TO DEFENSE, INDEMNITY, RELEASE
### OF LIABILITY AND ALLOCATION OF RISK

This Master Service Agreement (the "Agreement") is entered into at Houston, Texas this 21st day of July, 2015 by and between ROWAN COMPANIES, INC., located at 2800 Post Oak Boulevard, Suite 5450, Houston, Texas 77056 (hereinafter referred to as "Rowan" or "CONTRACTOR" or "Company"), and PETRUS OIL AND GAS LIMITED located at Unit 1, James Watt close, Gapton Hall Ind Est, Great Yarmouth, Norfolk, United Kingdom NR31 0NX (hereinafter referred to as "SUBCONTRACTOR") and, together with Rowan, referred to individually as the "Party" or collectively as the "Parties".

WHEREAS, CONTRACTOR, its Parent, Subsidiary, Affiliated and Joint venture companies are drilling contractors engaged in the business of drilling offshore wells and conducting associated operations in various areas of the world and in navigable waterways through the use of vessels designated as mobile offshore drilling units ("MODUs").

WHEREAS, CONTRACTOR and/or its subsidiary, Affiliated and Joint venture companies regularly and customarily enters into contracts with independent contractors for the supply of goods, tools, equipment, parts, materials and supplies ("Goods") and/or labor or services ("Services") in connection with Rowan's operations;

WHEREAS, SUBCONTRACTOR and/or its subsidiary and Affiliated companies are engaged in the business of providing Goods and/or Services which may be required by Rowan in the conduct of Rowan's business; and

WHEREAS, SUBCONTRACTOR desires to provide Goods and/or Services to Rowan or perform Work for Rowan from time to time, on an as-needed basis, as an independent contractor.

NOW, THEREFORE, in consideration of the mutual promises and agreements herein contained the sufficiency of which is hereby acknowledged, the Parties hereto mutually agree as follows:

1. **NATURE OF THE WORK:**

   1.1. This Agreement and the applicable Purchase Order shall control and govern the performance of all Work during the term of this Agreement. As used in this Agreement the following words and terms shall have the meanings ascribed to them below:

1

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

a) "Affiliated company" means a company or other legal entity which controls or is controlled by CONTRACTOR or SUBCONTRACTOR, or which is controlled by an entity which controls CONTRACTOR or SUBCONTRACTOR. For purposes hereof, control means the ownership, directly or indirectly, of fifty percent (50%) or more of the shares or voting rights in a company or legal entity.

b) "CONTRACTOR's other contractors" means CONTRACTOR's other contractors and subcontractors, at any tier, other than SUBCONTRACTOR and SUBCONTRACTOR's subcontractors, providing goods and services to CONTRACTOR in conjunction with the work or services performed by CONTRACTOR for its Customer or Client. References to CONTRACTOR's other contractors shall not include or be deemed to include SUBCONTRACTOR or SUBCONTRACTOR's subcontractors or any Customer or Client.

c) "Customer or Client" means a party, company or entity for which CONTRACTOR or its Affiliated or Joint venture company is performing services.

d) "SUBCONTRACTOR's subcontractors" means SUBCONTRACTOR's contractors and subcontractors at any tier providing goods and services to SUBCONTRACTOR in conjunction with the performance of the Work.

e) "Work" means the performance or undertaking of all work and Services, and the supplying of Goods, tools, equipment, machines, appliances, parts, material or supplies by SUBCONTRACTOR associated with this Agreement and/or a Purchase Order.

f) "Purchase Order" means (1) a written work order agreed by the Parties; (2) a purchase order issued by CONTRACTOR or one of CONTRACTOR's various subsidiaries, Affiliates or Joint venture companies; or (3) an oral work order requesting SUBCONTRACTOR to perform the Work designated in such work order, or oral request, pursuant to the terms and conditions of this Agreement. All oral work orders shall be promptly reduced to writing and counter-signed by the Parties as soon as practicably possible in the form of one of the other means provided in Article 1.1(f) 1 or 2 hereinabove; however failure to do so shall not prejudice the application of the Agreement with respect to any Work undertaken by SUBCONTRACTOR pursuant to the oral work order.

g) "Joint venture company" means any company in which Rowan or an Affiliated company of Rowan owns less than fifty percent (50%) of its

2

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

shares, voting rights or other controlling rights, and such company provides drilling services, material or equipment to a Customer or Client with the support of Rowan or its Affiliated companies. A non-exclusive list of Rowan's Joint venture companies are listed in Exhibit B.

1.2.    If CONTRACTOR desires to have SUBCONTRACTOR perform Work, CONTRACTOR shall issue a Purchase Order specifying the Work to be performed by SUBCONTRACTOR.  If SUBCONTRACTOR should fail to acknowledge its acceptance of the Purchase Order, in writing, within the time specified in the Purchase Order or five (5) days, whichever is earlier, of CONTRACTOR's issuance of such Purchase Order, said failure shall be deemed a rejection thereof; provided, however, that if SUBCONTRACTOR commences the performance of such Work without acknowledging its acceptance of the Purchase Order as herein provided, such commencement of performance shall be deemed to be an acceptance of the applicable Purchase Order by SUBCONTRACTOR.

1.3.    This Agreement does not obligate CONTRACTOR to order Work from SUBCONTRACTOR by issuing Purchase Orders nor does it obligate SUBCONTRACTOR to accept such Purchase Orders, provided, however that if CONTRACTOR issues a Purchase Order and SUBCONTRACTOR accepts such Purchase Order or if such Purchase Order is deemed accepted, the performance of the Work by SUBCONTRACTOR shall be governed by, subject to and in accordance with all of the terms and provisions of this Agreement and such Purchase Order which together shall govern the rights and duties of and shall be deemed a two-party agreement between CONTRACTOR and SUBCONTRACTOR.

1.4.    Upon acceptance of a Purchase Order, at any time, and from time to time, SUBCONTRACTOR shall commence the Work at the agreed upon time and perform the Work with due diligence and without delay, furnishing the labor, insurance, transportation to the shore base, tools, supervision, equipment, machines and appliances (together with the necessary consumable materials and supplies), or any one or more of such items which are necessary or appropriate to the performance of the Work ordered by CONTRACTOR, for the compensation designated in the applicable Purchase Order or if no compensation is designated, at SUBCONTRACTOR's current price list or pursuant to a pricing agreement between the Parties, if applicable, which SUBCONTRACTOR agrees will not exceed the prices for similar services and/or equipment in the area where the Work is performed.  Time is expressly declared to be of the essence of this Agreement and each Purchase Order.

ROWAN 00086

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

1.5.     Each Purchase Order shall be deemed to incorporate the provisions of this Agreement by reference and the terms and provisions hereof shall govern and control each such Purchase Order provided, however, that in any particular written Purchase Order which is executed by both Parties any of the terms and provisions of this Agreement may be modified or eliminated for the purposes of that Purchase Order (and that Purchase Order only) by specific provisions to that effect referring to the terms and provisions of this Agreement to be modified or eliminated. In the event of a conflict between any of the terms and provisions of any Purchase Order and the terms and provisions of this Agreement not specifically modified or eliminated by such Purchase Order the terms and conditions of this Agreement shall control.

1.6.     This Agreement shall be on behalf of and for the benefit of CONTRACTOR and its subsidiary and Affiliated and Joint venture companies. Likewise, this Agreement shall be on behalf of and for the benefit of SUBCONTRACTOR and its subsidiary and Affiliated companies. Purchase Orders may be issued and accepted by Affiliated companies of the Parties and by Joint venture companies as follows:

a)     CONTRACTOR and/or any of CONTRACTOR's subsidiary or Affiliated companies may request SUBCONTRACTOR and/or any of SUBCONTRACTOR's subsidiary or Affiliated companies to perform Work by issuing a Purchase Order as provided in this Agreement. For purposes of a Purchase Order issued by one of CONTRACTOR's subsidiary or Affiliated companies, such subsidiary or Affiliated company shall be deemed to be the "CONTRACTOR" for all purposes under such Purchase Order.

b)     SUBCONTRACTOR and/or any of SUBCONTRACTOR's subsidiary or Affiliated companies may accept a Purchase Order and perform the Work requested by CONTRACTOR and/or CONTRACTOR's subsidiary or Affiliated companies. For purposes of a Purchase Order accepted by one of SUBCONTRACTOR's subsidiary or Affiliated companies, such subsidiary or Affiliated company shall be deemed to be the "SUBCONTRACTOR" for all purposes under such Purchase Order.

c)     Any subsidiary or Affiliated company of CONTRACTOR that issues a Purchase Order and/or any subsidiary or Affiliated company of SUBCONTRACTOR that accepts a Purchase Order shall be bound by and subject to the terms of this Agreement and the applicable Purchase Order.

4

ROWAN 00087

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

1.7.   Term and Termination:   This Agreement shall remain in full force and effect until terminated by either Party by giving thirty (30) days' notice in writing at the other Party's address.  Notwithstanding the termination of this Agreement, the Parties shall continue to be bound by the provisions of this Agreement that reasonably require some action or forbearance, including without limitation the performance of any outstanding Purchase Orders. This Agreement shall apply to all Work, Goods and/or Services provided by SUBCONTRACTOR and/or its subsidiary and Affiliated companies for Rowan and/or its subsidiary and Affiliated companies regardless of whether the Parties enter into a separate Purchase Order. This Agreement shall control and govern in the event of a conflict with a specific Purchase Order. Notwithstanding anything in this Agreement to the contrary, CONTRACTOR may terminate any Purchase Order or Purchase Orders or order suspension of the Work upon twenty-four (24) hour written notice to SUBCONTRACTOR.  In the event of such termination of a Purchase Order or Purchase Orders or suspension of the Work under this article, and in the absence of a material breach by SUBCONTRACTOR, CONTRACTOR shall, in accordance with the applicable Purchase Order, pay SUBCONTRACTOR for all Work satisfactorily performed prior to the date of termination.  The foregoing shall be the complete compensation to be received by SUBCONTRACTOR in such case and CONTRACTOR shall not be liable to pay any bonus, damage or other claim asserted by SUBCONTRACTOR for its expected profit on the uncompleted portion of the Work.

2.   **COMPENSATION:**

2.1.   The amount of compensation payable to SUBCONTRACTOR shall be agreed to by Rowan and SUBCONTRACTOR at the time a specific Purchase Order  is given, and shall be payable after the full and final completion of the Work by SUBCONTRACTOR and the acceptance thereof by Rowan. SUBCONTRACTOR shall submit invoices for approval to Rowan within ten (10) days after completion of the Work covered by the specific Purchase Order, and Rowan shall, unless otherwise agreed to by the Parties in the specific Purchase Order, pay SUBCONTRACTOR for the Work rendered within forty-five (45) days from receipt of invoices covering such Work.  In the event Rowan disputes an invoice, payment will be delayed. In the event any invoice is not submitted to Rowan within one hundred and twenty (120) days following completion of the Work, Rowan, in its sole discretion, may deem any such invoice null and void and SUBCONTRACTOR hereby agrees to waive any claim relating to such invoice or Work.

2.2.   All payments under this Agreement and/or the applicable Purchase Order shall be in currency of the United States of America, unless otherwise agreed to by the

ROWAN 00088

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

Parties in the specific Purchase Order or as required by local law where Work is being performed; provided, however, that if SUBCONTRACTOR makes expenditures in other currency for which SUBCONTRACTOR is entitled to reimbursement under the terms of this Agreement and/or the applicable Purchase Order, CONTRACTOR shall have the right (but not the obligation) to reimburse SUBCONTRACTOR in such currency and amount up to the total of all such local expenditures. If it becomes necessary under this Agreement and/or any applicable Purchase Order to refer to a rate of exchange between the U. S. Dollar and any other currency, such rate of exchange shall be the selling price of such currency as quoted in the Wall Street Journal (New York Edition) or if no such rate is published, the rate published in the London Financial Times on the last business day of the month in which occurred the event calling for the employment of a rate of exchange, unless applicable law requires that a different exchange rate be used.

2.3.  If CONTRACTOR disputes and does not approve an item billed, CONTRACTOR shall notify SUBCONTRACTOR of the item or portion of an item disputed and may withhold payment for the disputed item until settlement of the dispute. CONTRACTOR's right to withhold such payment shall be in addition to and not in any way in lieu of any other right of CONTRACTOR hereunder, including the right to raise disputes for the first time after audit. Payment of any invoice shall not prejudice the right of CONTRACTOR to question the propriety of any charges therein. All payments shall be on account only and are subject to adjustment after audit.

3.  **WARRANTIES:**

**ALL WORK PERFORMED BY SUBCONTRACTOR SHALL BE DONE WITH DUE DILIGENCE, IN A GOOD AND WORKMANLIKE MANNER, AND USING SKILLED, COMPETENT AND EXPERIENCED WORKMEN AND SUPERVISORS. ALL GOODS FURNISHED BY SUBCONTRACTOR SHALL BE OF THE BEST QUALITY FOR THEIR RESPECTIVE PURPOSES AND SHALL BE FREE FROM DEFECTS. ANY PORTION OF THE WORK FOUND DEFECTIVE OR UNSUITABLE SHALL BE PROMPTLY REMOVED, REPLACED OR CORRECTED BY SUBCONTRACTOR WITHOUT ADDITIONAL COST OR RISK TO ROWAN. THIS APPLIES ALSO WHEN THE DEFECT IS DISCOVERED AFTER DELIVERY AND/OR COMPLETION OF THE WORK. SUBCONTRACTOR AGREES TO INSPECT ALL MATERIALS AND EQUIPMENT FURNISHED BY ROWAN, IF ANY, IN CONNECTION WITH THE PERFORMANCE OF THE WORK UNDER THIS AGREEMENT. SUBCONTRACTOR SHALL WITHOUT DELAY NOTIFY ROWAN OF ANY DEFECTS IN SUCH MATERIALS AND EQUIPMENT. IF SUBCONTRACTOR HAS NOT NOTIFIED CONTRACTOR OF ANY SUCH**

ROWAN 00089

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

**DEFECT, AND AS A RESULT, CONTRACTOR INCURS EXTRA COSTS IN CONNECTION WITH THE WORK OR LOSES RIGHTS OR GUARANTEES, THEN ALL SUCH COSTS INCURRED SHALL BE BORNE BY SUBCONTRACTOR. SUBCONTRACTOR SHALL BE RESPONSIBLE FOR ALL COSTS OF TRANSPORTING, TREATING AND/OR DISPOSAL OF ALL WASTE GENERATED BY SUBCONTRACTOR IN CONNECTION WITH THE GOODS AND/OR SERVICES PROVIDED BY SUBCONTRACTOR. THE ABOVE PROVIDED WARRANTIES ARE IN ADDITION TO ANY WARRANTIES WHICH MAY BE SPECIFIED IN THE PURCHASE ORDER. IN THE EVENT SUBCONTRACTOR ISSUES ANY KIND OF NOTICE TO ONE OR MORE OF ITS CUSTOMERS ANNOUNCING DEFECT, CONCERNS OR ISSUES WITH RESPECT TO ANY GOOD OR SERVICE PURCHASED BY CONTRACTOR, INCLUDING BUT NOT LIMITED TO PUBLIC INFORMATION BULLETINS AND RECALL NOTICES (COLLECTIVELY REFERRED TO AS THE "PIB"), SUBCONTRACTOR SHALL INCLUDE CONTRACTOR ON ITS ISSUANCE OF EACH SUCH PIB BY NOTIFYING CONTRACTOR PIB@ROWANCOMPANIES.COM. SUBCONTRACTOR'S FAILURE TO ISSUE ANY SUCH PIB TO CONTRACTOR IN A TIMELY MANNER SHALL BE CONSIDERED A MATERIAL BREACH OF THIS AGREEMENT, AND SUBJECT SUBCONTRACTOR TO DAMAGES RESULTING FROM SUCH FAILURE.**

4.   INDEPENDENT CONTRACTOR:

In the performance of any Work by SUBCONTRACTOR for Rowan, SUBCONTRACTOR conclusively shall be deemed an independent contractor, with the authority and right to direct and control all of the details of the Work, Rowan being interested only in the results obtained. However, all Work performed by SUBCONTRACTOR shall be subject to Rowan's approval and to Rowan's general right of inspection. Rowan shall have no right or authority to supervise or give instructions to SUBCONTRACTOR's employees or personnel, who shall at all times be under the direct and sole supervision and control of SUBCONTRACTOR. It is the understanding and intention of the Parties hereto that no relationship of master and servant or principal and agent shall exist between either Rowan and SUBCONTRACTOR or Rowan and SUBCONTRACTOR's employees or personnel.

5.   GOVERNING LAW/VENUE:

**The interpretation, construction and effect of this Agreement, and all rights and obligations of the Parties arising hereunder, shall be governed exclusively by the General Maritime Law of the United States (not including, however, any of its conflicts of law rules which would direct or refer to the laws of another jurisdiction),**

ROWAN 00090

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

and to the extent such law is not applicable, then by the laws of the State of Texas. Rowan and SUBCONTRACTOR hereby submit to the exclusive jurisdiction of the state and federal courts of Harris County, Texas, and waive any right whereby a Party might be entitled to submit any dispute hereunder to the courts of another county, parish, state or country. The rights and obligations of the Parties under this Agreement or any Purchase Order shall not be governed by the provisions of the 1980 U.N. Convention on Contracts for the International Sale of Goods.

6.     <u>RELEASE, DEFENSE AND INDEMNITY OF LIABILITY:</u>

6.1    It is understood that it is in the best interests of the Parties that certain risks of the enterprise in which they are engaged should be identified and allocated as between them. With respect to subparagraphs 6.3 and 6.4 below, it is the intent of the Parties that liability shall be allocated on the basis of the identity of the entity or individual making the claim. Specifically, it is the intent of the Parties that, with respect to the types of CLAIMS identified in subparagraph 6.3 below, SUBCONTRACTOR shall fully release, defend and indemnify ROWAN GROUP for all such CLAIMS made by any member of SUBCONTRACTOR GROUP against any member of ROWAN GROUP. Reciprocally, it is the intent of the Parties that, with respect to the types of CLAIMS identified in subparagraph 6.4 below, Rowan shall fully release, defend and indemnify SUBCONTRACTOR GROUP for all such CLAIMS made by any member of ROWAN GROUP against any member of SUBCONTRACTOR GROUP. Accordingly, the release, defense and indemnity provisions hereinafter set forth in this Agreement shall be liberally construed to effectuate that intent, and there shall be no strict construction against such provisions. In addition, the provisions of subparagraphs 6.3 and 6.4 below shall govern and control in the event of a conflict with another provision of this Agreement. The Parties therefore agree to the following mutual and reciprocal release, defense and indemnity obligations specified in subparagraphs 6.3 and 6.4 below:

6.2    The following definitions apply to this Agreement:

a)     "ROWAN GROUP" shall mean: (i) Rowan, (ii) Rowan's parent, subsidiaries and Affiliated and Joint venture companies, (iii) the suppliers, other contractors and subcontractors of every tier of the entities specified in subparagraphs 6.2(a)(i) and (ii) above (except SUBCONTRACTOR GROUP, (iv) the customers of the entities specified in subparagraphs 6.2(a)(i) and (ii) above as well as the parent, subsidiaries, Affiliated companies, partners, and joint venturers of such customers, (v) the vessels owned or operated by ROWAN GROUP

8

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

(whether in personam or in rem), and (vi) the officers, directors, stockholders, agents, consultants and agency personnel, employees (including, but not limited to, any person who is on ROWAN GROUP's payroll or who has received or is entitled to receive wages from ROWAN GROUP in connection with any work performed or to be performed, regardless of whether such person claims to be or is found to be a borrowed servant of SUBCONTRACTOR GROUP), and insurers of the entities specified in subparagraphs 6.2(a)(i)-(vi) above, and (vii) the spouses, heirs, survivors, representatives, estates, dependents and children of the entities and individuals specified in subparagraphs 6.2(a)(i)-(vi) above.

b)    "SUBCONTRACTOR GROUP" shall mean: (i) SUBCONTRACTOR, (ii) SUBCONTRACTOR's parent, subsidiaries and Affiliated companies, (iii) the suppliers, other contractors and subcontractors of every tier of the entities specified in subparagraphs 6.2(b)(i) and (ii) above, (iv) the vessels (whether in personam or in rem), officers, directors, stockholders, agents, consultants and agency personnel, employees (including, but not limited to, any person who is on SUBCONTRACTOR GROUP's payroll or who has received or is entitled to receive wages from SUBCONTRACTOR GROUP in connection with any work performed or to be performed, regardless of whether such person claims to be or is found to be a borrowed servant of ROWAN GROUP or such person has entered into an employment contract with CONTRACTOR or any of CONTRACTOR's Affiliated companies for the sole purpose of such person obtaining a visa so that such person can provide Services under this Agreement), and insurers of the entities specified in subparagraphs 6.2(b)(i)-(iii) above, and (v) the spouses, heirs, survivors, representatives, estates, dependents and children of the entities and individuals specified in subparagraphs 6.2(b)(i)-(iv) above.

c)    "CLAIMS" shall mean all lawsuits, claims, contractual defense and indemnity obligations owed to others, fines, penalties, demands, causes of action, losses or expenses of every kind and character (including, but not limited to, reasonable attorney's fees, costs, and investigative and litigation expenses, including those incurred in the defense of indemnified claims and those incurred to enforce a right of indemnity).

d)    "FAULT" shall be understood to be all-inclusive and shall mean every type of fault or alleged fault or theory of liability whatsoever, including conditions of premises or property (including any pre-existing

9

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

condition, defect or ruin of premises, regardless of whether such condition, defect or ruin be latent or patent), the unseaworthiness of any vessel (including any drilling rig or vessel owned or operated by ROWAN GROUP or any vessel owned or operated by SUBCONTRACTOR GROUP), the ingress or egress and/or loading or unloading of personnel or cargo, breach of representation or warranty (express or implied), strict liability, product liability, tort, breach of contract, violation of federal, state or local statutes or regulations, or the negligence or gross negligence of any person or persons, including that of the indemnified party or parties (regardless of whether such negligence or gross negligence be sole, joint, or concurrent, comparative, active or passive).

6.3  **SUBCONTRACTOR's INDEMNITY OBLIGATION FOR PEOPLE:** SUBCONTRACTOR agrees to be fully responsible for and to fully indemnify, release, hold harmless and defend ROWAN GROUP from and against all CLAIMS for disease, illness, mental, emotional or physical/bodily injury, and death (including, but not limited to, loss of services, loss of society, evacuation charges, medical expenses, pain and suffering, maintenance and cure, USL&H benefits, worker's compensation benefits, loss of past or future earnings, and any other related losses or damages) and any earnings, salary, benefits or other compensation or remuneration associated with or resulting from the Employment Contract (as defined in section 6.2(b) above) which may be brought against ROWAN GROUP by SUBCONTRACTOR GROUP directly or indirectly arising out of, incident to, or in connection with the Work  or presence of SUBCONTRACTOR GROUP or the labor, materials or equipment furnished by SUBCONTRACTOR GROUP, without limit and without regard to the cause or causes thereof, including the FAULT or alleged FAULT of ROWAN GROUP.

6.4  **ROWAN's INDEMNITY OBLIGATION FOR PEOPLE:** Rowan agrees to be fully responsible for and to fully indemnify, release, hold harmless and defend SUBCONTRACTOR GROUP for all CLAIMS for disease, illness, mental, emotional or physical/bodily injury, and death (including, but not limited to, loss of services, loss of society, evacuation charges, medical expenses, pain and suffering, maintenance and cure, USL&H benefits, worker's compensation benefits, loss of past or future earnings, and any other related losses or damages) which may be brought against SUBCONTRACTOR GROUP by ROWAN GROUP directly or indirectly arising out of, incident to, or in connection with the Work, or presence of

ROWAN 00093

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

ROWAN GROUP or the labor, materials or equipment furnished by ROWAN GROUP, without limit and without regard to the cause or causes thereof, including the FAULT or alleged FAULT of SUBCONTRACTOR GROUP.

6.5     SUBCONTRACTOR'S INDEMNIFICATION FOR POLLUTION OR CONTAMINATION: SUBCONTRACTOR agrees to be fully responsible for and to fully indemnify, release, hold harmless and defend ROWAN GROUP for all CLAIMS in respect of or arising out of control and removal of all pollution or contamination either caused in any way by SUBCONTRACTOR GROUP or originating or emanating from the equipment or property of SUBCONTRACTOR GROUP  (including but not limited to spills of fuels, lubricants, motor oils, ballast, sewage, bilge, garbage, etc.), without limit and without regard to the cause or causes thereof, including the FAULT or alleged FAULT of ROWAN GROUP. SUBCONTRACTOR will reimburse ROWAN GROUP for any costs incurred by ROWAN GROUP in controlling, treating, remediating or removing such pollution or contamination.

6.6     SUBCONTRACTOR'S INDEMNIFICATION FOR VIOLATIONS OF LAW: SUBCONTRACTOR GROUP shall comply with all laws, rules, regulations and orders, federal, state or local, which are now or may become applicable to the Work, Goods or Services provided under this Agreement. SUBCONTRACTOR agrees to be fully responsible for and to fully indemnify, release, hold harmless and defend ROWAN GROUP from and against all CLAIMS arising in connection herewith relating to any violation of such laws, rules, regulations and orders, without limit and without regard to the cause or causes thereof, including the FAULT or alleged FAULT of ROWAN GROUP.

6.7     SUBCONTRACTOR'S INDEMNIFICATION FOR CONSEQUENTIAL DAMAGES: SUBCONTRACTOR agrees to be fully responsible for and to fully indemnify, release, hold harmless and defend ROWAN GROUP from and against all CLAIMS in respect of special, indirect or consequential damages arising in connection herewith incurred by SUBCONTRACTOR GROUP, without limit and without regard to the cause or causes thereof, including the FAULT or alleged FAULT of ROWAN GROUP and the Parties agree that special, indirect or consequential damages shall, notwithstanding any interpretation under applicable law to the contrary, be deemed to include, whether direct or indirect, without limitation, the following: loss of profit or revenue; costs and expenses resulting from business interruptions; cost of or loss of use of property, equipment,

ROWAN 00094

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

materials and services, including without limitation those provided by contractors or subcontractors of every tier or by third parties.

6.8   **SUBCONTRACTOR'S INDEMNIFICATION FOR LIENS:** SUBCONTRACTOR shall pay for all Goods and Services provided by or on behalf of SUBCONTRACTOR GROUP, and SUBCONTRACTOR shall not permit any such labor, service or materials to become liens affixed against the property of ROWAN GROUP. SUBCONTRACTOR agrees to be fully responsible for and to fully indemnify, release, hold harmless and defend ROWAN GROUP from and against all CLAIMS arising in connection with any such liens, without limit and without regard to the cause or causes thereof, including the FAULT or alleged FAULT of ROWAN GROUP. SUBCONTRACTOR further agrees that any sums due SUBCONTRACTOR by Rowan may be withheld or applied toward the discharge or payment of any such liens.

6.9   **SUBCONTRACTOR'S INDEMNIFICATION FOR PATENT INFRINGEMENT:** SUBCONTRACTOR agrees to be fully responsible for and to fully indemnify, release, hold harmless and defend ROWAN GROUP from and against all CLAIMS which may be based upon the infringement of any patent or any other proprietary right in connection with performance of the Work hereunder or the use of Goods furnished by SUBCONTRACTOR GROUP hereunder, without limit and without regard to the cause or causes thereof, including the FAULT or alleged FAULT of ROWAN GROUP.

6.10   **RECOGNITION OF INDEMNITY PROVISIONS:** The Parties recognize that the Work under this Agreement may result in illness, injury or death and other losses and liabilities. It is the intention of the Parties hereto that the provisions of this Paragraph 6 shall govern the allocation of risks and liabilities of said Parties without regard to FAULT as more particularly specified above, it being acknowledged that the compensation payable to SUBCONTRACTOR has been based upon the express understanding that such risks and liabilities shall be determined in accordance with the provisions of this Agreement.

6.11   **SUBCONTRACTOR'S INDEMNIFICATION FOR USE OF ROWAN'S PROPERTY:** If SUBCONTRACTOR is providing equipment or services to a third party while on a drilling vessel, helicopter, support vessel or other property owned or operated by Rowan (collectively, "Rowan's Property"), or if SUBCONTRACTOR places, maintains or stores equipment or property on Rowan's Property pursuant to contract, free placement agreement or otherwise, SUBCONTRACTOR and Rowan agree and acknowledge that, in

ROWAN 00095

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

consideration of Rowan allowing SUBCONTRACTOR to conduct such operations on Rowan's Property, SUBCONTRACTOR shall at all times assume the indemnification provisions and allocation of risks and liabilities set forth in this Agreement.

7.   **INSURANCE:**

7.1.   At all times during the term of this Agreement, SUBCONTRACTOR agrees to and shall carry insurance of the types and in the minimum amounts specified in Exhibit C attached hereto.  ROWAN GROUP shall be included as an additional assured under all of SUBCONTRACTOR's policies (except Workers' Compensation and Employer's Liability), will be provided with a waiver of subrogation and it is further agreed that SUBCONTRACTOR'S insurances are primary to any insurance carried by ROWAN GROUP but only to the extent of the specific liabilities and indemnities assumed by SUBCONTRACTOR under this Agreement.

7.2.   The Parties agree that the purpose of the insurance coverage required hereunder is to provide appropriate insurance to support the indemnity obligations expressly entered into by SUBCONTRACTOR in Article 6 above.  SUBCONTRACTOR's insurance obligations under this Article 7 shall not be dependent upon the solvency of any of its underwriters, and shall be separate from, and shall not in any way limit SUBCONTRACTOR's obligation to release, defend, indemnify and hold CONTRACTOR GROUP harmless as set out in this Agreement.

7.3.   SUBCONTRACTOR shall not use any vessel in the performance of Work for ROWAN GROUP at any time unless said vessel is adequately covered by insurance, as herein provided, and is operated within the navigation limits of the insurance policies applicable thereto.

7.4.   Rowan's Coverages:  Rowan will provide insurance of the same kind and in the same amount as required of SUBCONTRACTOR, insuring the specific liabilities and indemnities assumed by Rowan under this Agreement.

7.5.   Certificate of Insurance or other satisfactory evidence that such insurance is being carried by SUBCONTRACTOR shall be furnished to Rowan before any Work is performed by SUBCONTRACTOR for Rowan, and this requirement shall be a condition precedent to the payment of any sums which may be due to SUBCONTRACTOR. Such certificates shall provide at least thirty (30) days' notice to Rowan of cancellation or change in the insurance provided. SUBCONTRACTOR's liability hereunder shall not be limited to minimum insurance limits required herein or by failure of SUBCONTRACTOR to comply with all terms and conditions set forth in the above insurance provisions.  All

13

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

premium, deductibles and/or self-insured retentions relating to SUBCONTRACTOR's insurance coverages shall be solely for SUBCONTRACTOR's account.

7.6.   Separate Obligations:  Notwithstanding any other provisions of this Agreement to the contrary, the Parties hereby acknowledge and agree that the indemnity obligations of Paragraph 6 and the insurance obligations of Paragraph 7 are separate and distinct duties under this Agreement.  The Parties further acknowledge and agree that the indemnity provisions of this Agreement shall not limit, restrict or alter the insurance obligations of this Agreement, even if one or more of the indemnity provisions are held by a court to be unenforceable.

7.7.   Statutory Employer:  In all cases where SUBCONTRACTOR's employees (defined to include SUBCONTRACTOR's direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act, La. R.S. 23:1021 et seq, Rowan and SUBCONTRACTOR agree that all work and operations performed by SUBCONTRACTOR and its employees pursuant to this Agreement are an integral part of and are essential to the ability of Rowan to generate Rowan's goods, products and services for purposes of La R.S. 23:1061 (A)(1).  Furthermore, Rowan and SUBCONTRACTOR agree that Rowan is the statutory employer of SUBCONTRACTOR employees for purposes of La. R.S. 23:1061(A)(3).  Irrespective of Rowan's status as the statutory employer or special employer (as defined in La R.S. 23:1031(C)) of SUBCONTRACTOR employees, SUBCONTRACTOR shall remain primarily responsible for the payment of Louisiana workers' compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Rowan.

## 8.   REPORTS:

SUBCONTRACTOR  shall report to Rowan as soon as practicable all accidents or occurrences resulting in illness, injury or death or in loss of or damage to property in connection with the Work performed under this Agreement, and SUBCONTRACTOR shall furnish to Rowan, at Rowan's request, a copy of any reports made by SUBCONTRACTOR relating to such accidents or occurrences.

## 9.   TAXES:

9.1.   All compensation and payments due SUBCONTRACTOR hereunder are quoted exclusive of any value added tax, sales tax or similar tax which may be levied on such compensation or payments. Any such tax if imposed shall be separately stated on the applicable invoice and shall, if required, be paid by ROWAN to SUBCONTRACTOR who shall, if required, make the appropriate payments to the appropriate taxing authorities.

14

ROWAN 00097

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

9.2.   SUBCONTRACTOR shall bear the cost and be responsible for making all
necessary arrangements for and the payment of all import and re-export charges
including, but not limited to, customs' duties, fees, licenses, import tariffs or
similar charges imposed, including any brokerage fees and other ancillary fees in
connection therewith on any tools, equipment, machines, appliances, parts,
material and supplies imported and employed or used by SUBCONTRACTOR
GROUP in the performance of this Agreement and/or any Purchase Order.

9.3.   SUBCONTRACTOR shall pay all taxes and charges assessed or levied against or
on account of salaries or other benefits paid to SUBCONTRACTOR GROUP's
employees and all unemployment compensation insurance, old age benefits,
social security or any other taxes upon the wages of SUBCONTRACTOR, its
agents, employees and representatives imposed by any governmental authority
having jurisdiction over the SUBCONTRACTOR GROUP, this Agreement
and/or any Purchase Order.  SUBCONTRACTOR agrees to require the same
agreements and to be liable for any breach of such agreements by any of
SUBCONTRACTOR's subcontractors. SUBCONTRACTOR shall, if requested,
furnish ROWAN with satisfactory evidence of the payment of all taxes,
contributions and/or governmental charges.  SUBCONTRACTOR agrees to
furnish ROWAN with the information required to enable it to make the necessary
reports and to pay such taxes or charges.

9.4.   ROWAN, in the event that it is so required by law, regulation or decree, will
withhold any tax or governmental charge imposed, levied or assessed on account
of SUBCONTRACTOR's operations pursuant to this Agreement and/or the
applicable Purchase Order.  In such an event, ROWAN shall furnish to
SUBCONTRACTOR all receipts obtained for all taxes and governmental charges
so paid. SUBCONTRACTOR shall be responsible for and hold harmless and
indemnify ROWAN GROUP from and against any and all liabilities or claims for
such taxes or other governmental charges, including interest and penalties, which
any such governmental authority may impose, assess or levy against ROWAN
GROUP. If the SUBCONTRACTOR is exempt from corporate tax obligations to
be withheld by ROWAN, then such proof or exemption certificate shall be
provided within forty-five (45) days of ROWAN'S request. If
SUBCONTRACTOR does not provide such proof, ROWAN at its sole discretion
may withhold a reasonable amount to comply with corporate tax obligations.

9.5.   ROWAN and SUBCONTRACTOR shall cooperate and assist each other in
securing any beneficial tax treatment and in legally minimizing the tax obligations
covered under this Article 9. Such cooperation and assistance shall not be
unreasonably withheld.

ROWAN 00098

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

9.6. SUBCONTRACTOR agrees to make all reports and take all other actions necessary to satisfy tax, accounting and reporting requirements of any governmental authority (including any political sub-division thereof) claiming jurisdiction over SUBCONTRACTOR, its personnel, this Agreement, the applicable Purchase Order and/or the Work, at SUBCONTRACTOR's sole cost and expense.

9.7. Upon request, SUBCONTRACTOR shall furnish ROWAN evidence of its payment and compliance with its tax obligations under this Article 9 and to timely provide ROWAN with any additional information reasonably requested by ROWAN.

9.8. SUBCONTRACTOR shall protect, defend, hold harmless and indemnify ROWAN GROUP from and against any claims and liabilities for taxes including but not limited to income taxes, profit taxes, property taxes, stamp taxes, taxes on the salaries and wages of its employees, any sales or value added taxes and any governmental charges including penalties and interests, levied against SUBCONTRACTOR GROUP by any governmental authority on account of or resulting from the SUBCONTRACTOR GROUP'S performance of its obligations under this Agreement. Should any governmental authority demand payment of SUBCONTRACTOR's taxes from ROWAN GROUP, ROWAN shall notify SUBCONTRACTOR prior to making such payment and give SUBCONTRACTOR a reasonable length of time to come to terms with the government. If SUBCONTRACTOR is not able to come to terms with the government authority and ROWAN is required to pay on SUBCONTRACTOR's behalf, ROWAN shall invoice SUBCONTRACTOR for the amount of taxes so paid and SUBCONTRACTOR shall pay ROWAN within thirty (30) days of the invoice date.

## 10. DELAY:

Time is expressly declared to be the essence of this Agreement. In the event SUBCONTRACTOR fails or refuses to comply with the terms of this Agreement, in whole or in part, or shall unreasonably delay the performance of Work, Rowan, at its election, may terminate this Agreement or it may, if it so elects, take over any of SUBCONTRACTOR's equipment, property and personnel, and complete the Work and pay SUBCONTRACTOR the reasonable value of said services, which shall not exceed the contractual price agreed upon.

## 11. FORCE MAJEURE:

Neither Party shall be liable for failure to perform the terms of this Agreement when such performance is prevented, delayed or rendered impossible Force Majeure For purposes of

16

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

this Agreement, "Force Majeure" shall mean acts of God, acts, orders, decrees, instructions or other requirements of governmental entities or instrumentalities, insurrections, mobilizations, riots, acts of terrorism, vandalism, sabotage, strikes, lock-outs or other labor disturbances (it being expressly agreed that SUBCONTRACTOR shall have no right to compel Rowan to settle any such strike or other dispute on terms unsatisfactory to Rowan in Rowan's sole and absolute discretion), quarantines, floods, storms, hurricanes, tornadoes, droughts or other adverse weather conditions, fires, explosions, embargoes, or by other cause not reasonably within the control of either Party. In the event either Party is hindered or prevented from performing its obligations under this Agreement as a result of any Force Majeure, the time for the Party's performance hereunder shall be extended for a period equal to the duration of such Force Majeure. In the event however, that SUBCONTRACTOR's failure to perform due to Force Majeure extends more than thirty (30) days, Rowan shall be entitled to obtain the Goods and Services elsewhere, and shall not be required to obtain the Goods and Services from SUBCONBTRACTOR upon cessation of the Force Majeure event.

12.  **USE OF VESSELS:**

12.1    SUBCONTRACTOR may, with the prior approval of Rowan, perform services hereunder using vessel(s) owned and/or operated by others; provided, however, that SUBCONTRACTOR will remain liable to fulfill all duties, obligations and responsibilities under this Agreement as if SUBCONTRACTOR were the owner and operator of such vessel(s), and SUBCONTRACTOR will be responsible to ensure total compliance with the terms and conditions of this Agreement. Nothing contained herein shall be construed as making the actual owners and/or operators of such vessels third party beneficiaries of this Agreement, and nothing contained herein shall be construed as affecting such actual owner's and/or operator's liability to Rowan.

12.2    In the event Rowan's drilling vessel or other vessel(s) should break away from SUBCONTRACTOR's vessel(s) during the course of towing services covered hereunder, such SUBCONTRACTOR's vessel(s) shall stand by and render all reasonable service in saving the tow and reconnecting the tow line without any claim for salvage.

12.3    In the event any vessel(s) owned, operated or chartered by SUBCONTRACTOR should be constructively or actually lost and SUBCONTRACTOR files exoneration or limitation of liability proceedings in connection with such loss, it is expressly understood and agreed that this Agreement is a personal contract and none of the terms and conditions of this Agreement shall be affected by such proceedings and that the contractual rights and obligations of the Parties hereto shall be and remain the same as though such proceedings had never been filed. No

17

ROWAN 00100

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

judgment, order or ruling entered in such exoneration or limitation of liability proceedings shall void, invalidate or in any way affect or change the personal contractual relationship of the Parties hereto or the rights and liabilities of the Parties hereto as set forth in or arising out of this Agreement.

13.   **ASSIGNS:**

This Agreement shall be binding upon the Parties hereto and their respective heirs, successors or assigns.  CONTRACTOR may assign its rights and obligations under the Agreement and/or Purchase order provided that CONTRACTOR can demonstrate that the assignee has the financial strength required to fulfill CONTRACTOR's obligations under the Agreement. This Agreement shall not be assigned by SUBCONTRACTOR without the written consent of Rowan.

14.   **SAFETY RULES:**

14.1.   SUBCONTRACTOR shall, at all times, maintain strict discipline and good order among its employees and personnel. SUBCONTRACTOR shall adequately instruct its employees and personnel in the use of hazardous or toxic chemicals, safety equipment and proper work procedures for the purpose of prosecuting the work contemplated by this Agreement in a good and workmanlike manner and protecting against illness, injury or death and loss of or and damage to equipment and property. SUBCONTRACTOR shall establish safety rules and procedures, and shall require its employees and other personnel provided by SUBCONTRACTOR GROUP to observe such safety rules and procedures as well as any that may be issued by ROWAN GROUP and any safety or other regulations issued by governmental agencies.  SUBCONTRACTOR shall take all measures necessary to provide safe working conditions.  No smoking, open flame, matches or lighters shall be permitted on Rowan's equipment or property, except in areas designated by SUBCONTRACTOR, in consultation with Rowan, as areas where smoking, open flame, matches or lighters are permitted. SUBCONTRACTOR shall furnish Rowan promptly with a report of each accident which may occur, and shall notify all Government agencies of accidents, as required by law.

14.2.   SUBCONTRACTOR shall not commence the Work if SUBCONTRACTOR has not familiarized itself with ROWAN GROUP's security, safety, health and environmental rules. In addition, SUBCONTRACTOR shall have all required safety equipment prior to commencement of Work. ROWAN shall be under no obligation to pay SUBCONTRACTOR any amount when members of SUBCONTRACTOR GROUP are not permitted to perform Work due to lack of required safety equipment.  Additionally, SUBCONTRACTOR shall be liable to

ROWAN 00101

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

ROWAN for any incremental costs incurred (e.g., extra logistics costs) if immediate removal of SUBCONTRACTOR GROUP's employee(s) are required or if the Work is delayed due to SUBCONTRACTOR GROUP's failure to meet all applicable safety requirements.

14.3.   SUBCONTRACTOR shall ensure that all members of SUBCONTRACTOR GROUP have received all applicable training in the rules and procedures regarding hazardous materials, including the identification, handling, labeling, packaging, loading, transporting, unloading, storing and disposal of such materials and substances, as required by U.S. Department of Transportation Hazardous Materials Regulations, 49 C.F.R. Parts 171-177 or other applicable law, rule, regulation or order.  SUBCONTRACTOR shall maintain all required documentation to verify such training, and shall make such documents available to ROWAN upon request.

14.4.   It is the policy of Rowan to maintain a safe work environment.  The possession of any illegal drug, drug paraphernalia, alcoholic beverage, explosive, weapon or any other similar item or substance which could cause or contribute to injury to Rowan personnel or damage to its property is strictly prohibited at work locations or other business premises of Rowan. This policy may be implemented by such reasonable means as may from time to time be determined appropriate, including searches of the person and personal effects of any person. Compliance with this policy is a condition of this Agreement and personnel of Subcontractors and others will be required, under certain circumstances, to cooperate with drug testing procedures and drug searches.  SUBCONTRACTOR-provided personnel who decline to be searched or are otherwise found in violation of this policy will be excluded from Rowan work areas.  Rowan reserves the right, at all times, to have authorized personnel conduct reasonable searches or inspections on Rowan property of personal effects, lockers, baggage, vehicles, and quarters of employees and personnel provided by SUBCONTRACTOR for the purpose of determining if any such persons are in possession of any illegal or unauthorized items.  These searches will be conducted in cases where the Rowan receives reliable information indicating that reasonable cause exists to conduct a search.  When appropriate, such items discovered through these Rowan searches may be taken into custody and may be turned over to the proper law enforcement authorities.

14.5.   Article 14 is agreed to by both CONTRACTOR and SUBCONTRACTOR to be of the highest importance.  A breach or violation of any of the terms of Article 14 by SUBCONTRACTOR GROUP will be considered to be a material and substantial breach of this Agreement. CONTRACTOR may seek removal of SUBCONTRACTOR as provided in this Agreement and/or the applicable

19

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

Purchase Order and may take any other action permitted under law or by the terms of this Agreement, including its termination.

15. **CONFIDENTIALITY:**

SUBCONTRACTORS recognize and acknowledge that during the course of this Agreement it will be exposed to and have access to information and material developed specifically by and for the benefit of Rowan and sensitive and proprietary information (collectively, the "Confidential Information"). SUBCONTRACTOR agrees that all such Confidential Information is the property of Rowan Group. SUBCONTRACTOR will maintain in strict confidence the Confidential Information, and will not disclose the Confidential Information or use same to benefit itself or any third party. The restrictions in SUBCONTRACTOR's disclosure of Confidential Information do not apply to such information which is now or which hereafter, through no act or failure to act on the part of SUBCONTRACTOR, becomes generally known or available to the public or is required to be disclosed by a court of competent jurisdiction or by an administrative or quasi-judicial body. SUBCONTRACTOR shall use best efforts and exercise utmost diligence to protect and guard the Confidential Information.

16. **INVENTIONS:**

SUBCONTRACTOR agrees promptly to disclose to Rowan all improvements, inventions, designs, ideas, copyrightable works, discoveries, trademarks, copyrights, trade secrets, formulas, processes, techniques, know-how and data (collectively, the "Inventions") made or conceived or reduced to practice or learned by SUBCONTRACTOR during the performance of Work under this Agreement. SUBCONTRACTOR agrees that all such Inventions shall be the sole property of Rowan and that Rowan shall be the sole owner of all patents, copyrights and other rights in connection therewith. SUBCONTRACTOR will assist Rowan in every way to obtain and from time to time enforce patents and copyrights on the Inventions in any and all countries, and to that end SUBCONTRACTOR will execute all documents for use in applying for and obtaining such patents thereon and enforcing same.

17. **AUDIT:**

For a period of four (4) years from termination of this Agreement, SUBCONTRACTOR GROUP shall keep proper books, records and accounts of operations hereunder. SUBCONTRACTOR GROUP shall permit Rowan Group at all reasonable times to inspect such books, records and accounts.

20

ROWAN 00103

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

18.  **CONSTRUCTION:**

In the event any provision of this Agreement is inconsistent with or contrary to any applicable law, rule, regulation or order, such provision shall be deemed to be modified to the extent required to comply with the applicable law, rule, regulation or order, and so modified such provision and this Agreement shall continue in full force and effect. If any of the terms and conditions of this Agreement are held by any court to be invalid under the laws of any political body having jurisdiction over the subject matter hereof, such invalidity shall not invalidate the entire Agreement, but instead, the Agreement shall be construed as if not containing the particular provision or provisions held to be invalid, and the remainder of the Agreement shall be construed, interpreted and enforceable to the maximum extent permitted by law.

19.  **EFFECTIVE DATE:**

This Agreement shall be deemed to have been in full force and effect on the date first above written or on the date on which SUBCONTRACTOR first commenced the performance of any work for Rowan or first provided goods, equipment or facilities to Rowan, whichever first occurred, and even though this Agreement may not then have been reduced to writing.

20.  **LOIA ENDORSEMENT:**

SUBCONTRACTOR and Rowan hereby acknowledge the exception to the Louisiana Oilfield Indemnity Act ("LOIA") recognized in <u>Marcel v. Placid Oil Co.</u>, 11 F.3d 563 (5th Cir. 1994) and subsequent cases, allowing a party to obtain insurance as an additional insured on the other party's insurance policies so long as the entire cost of adding such party as an additional insured is paid by such party (the "LOIA Endorsement"). If applicable to the Work, it is the intention of SUBCONTRACTOR to give Rowan the option of obtaining the LOIA Endorsement. To achieve this objective, SUBCONTRACTOR and Rowan agree as follows:

a)  SUBCONTRACTOR will, upon Rowan's request and by separate endorsement to one or more of SUBCONTRACTOR's primary and excess comprehensive general liability or umbrella policies (and not by the use of a "blanket" naming and waiving provision), have ROWAN GROUP added as additional insured in the amount of $25,000,000 to cover CLAIMS by SUBCONTRACTOR GROUP against ROWAN GROUP. In the event of any such CLAIMS, such insurance shall be primary to any and all other existing insurance carried by SUBCONTRACTOR.

b)  Prior to placement of the LOIA Endorsement, SUBCONTRACTOR will advise Rowan of the cost of the LOIA Endorsement. Following Rowan's request to SUBCONTRACTOR to place the LOIA Endorsement, SUBCONTRACTOR's

ROWAN 00104

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

insurer(s) shall present Rowan with an invoice for the entire cost of obtaining such LOIA Endorsement (plus applicable taxes, if any), which Rowan shall pay directly to such insurer(s).

c)   In the event Rowan has elected to obtain such LOIA Endorsement and operations are ongoing at the time such LOIA Endorsement expires, SUBCONTRACTOR will advise Rowan of such expiration and the amount to renew such LOIA Endorsement and SUBCONTRACTOR shall have the same rights regarding the renewal of such LOIA Endorsement.

## 21.   NOTICES:

All notices to be given with respect to this Agreement and applicable Purchase Orders, unless otherwise provided for in a specific Purchase Order, shall be given in writing to CONTRACTOR and SUBCONTRACTOR at the addresses set forth below and shall be delivered (i) by hand to the Party for which intended, (ii) by registered or certified mail, return receipt requested, postage prepaid, or (iii) by facsimile or electronic mail.  Any notice given by hand delivery or registered mail shall be deemed given at the time of delivery and any notice given by facsimile or electronic mail shall be deemed to be given at the time transmission has been confirmed; provided, however, where the time of transmission falls outside the normal business hours of the recipient, delivery shall be deemed to be given at 0900 hours (recipient's local time) on the next following business day at the location of receipt.

| CONTRACTOR: | Rowan Companies, Inc. |
|---|---|
| Address: | 2800 Post Oak Blvd., Suite 5450 Houston, Texas 77056-6189 |
| Telephone: | (713) 960-7561 |
| Attention: | Abigail Jimenez |
| Email: | abijim@rowancompanies.com |
| SUBCONTRACTOR: | Petrus  Oil and Gas Limited |
| Address: | Unit 1, James Watt close, Gapton Hall Ind Est, Great Yarmouth, Norfolk NR31 0NX United Kingdom |
| Telephone: | +44 (0)1493 653903 |
| Attention: | Mathew Owen |

22

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

Email:                    mathew.owen@petrustech.com

**22.**  **ANTI-BRIBERY, MONEY LAUNDERING & ANTI-TERRORISM
REPRESENTATIONS:**

22.1.  Definitions

a)  "Anti-Corruption Laws" means the United States Foreign Corrupt Practices
Act (as amended from time to time, the "FCPA"), the United Kingdom
Bribery Act 2010 (as amended from time to time, the "Bribery Act"), and
any other applicable anti-bribery Laws.

b)  "Anti-Terrorism Laws" means Laws prohibiting the engagement of, or
becoming involved in, supporting financially, or otherwise sponsoring,
facilitating, or giving aid or comfort to any terrorist person, activity or
organization.

c)  "Government Official" means: (a) any appointed, elected, or honorary
official of, or any officer or employee of, (i) any government, government
ministry or department, or any agency or instrumentality thereof, (ii) any
company or corporation that is owned or controlled by a government (such as
a National Oil Company) or (iii) any public international organization or any
person acting in an official capacity for or on behalf of any such entity or
organization; or (b) any Political Official (as defined below).

d)  "Law" means any law, rule, regulation, ordinance, etc. of the United States or
any other state or country having jurisdiction.

e)  "Money Laundering Laws" means Laws relating to the receipt, transfer,
transportation, use, structuring, diverting, or hiding of the proceeds of any
criminal activity whatsoever

f)  "Political Official" means any (i) political party, (ii) official of any political
party or (iii) candidate for political office.

g)  "Related Parties" means, with respect to a person or entity, any of any of
such person's or entity's (i) affiliates and its and their respective owners,
partners, directors, officers, employees, agents, consultants or representatives
or (ii) subcontractors who perform any part of this Agreement.

22.2.  Representation. SUBCONTRACTOR represents, warrants, covenants and agrees
that it and its Related Parties shall at all times comply with the Anti-Corruption
Laws, the Money Laundering Laws and the Anti-Terrorism Laws, as well as all

23

ROWAN 00106

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

other applicable Laws. SUBCONTRACTOR hereby represents, warrants, covenants and agrees that it is familiar with the Anti-Corruption Laws, the Money Laundering Laws and the Anti-Terrorism Laws. SUBCONTRACTOR further represents, warrants, covenants and agrees that it and its Related Parties will participate in and complete any due diligence background inquiry required by CONTRACTOR and any compliance related training required by CONTRACTOR.

22.3.   Government Officials. SUBCONTRACTOR represents, warrants, covenants and agrees that neither SUBCONTRACTOR nor any of SUBCONTRACTOR's Related Parties will offer, give or pay or promise to give or pay any person in CONTRACTOR's services, any client of CONTRACTOR, any Government Official or any family member of any of the foregoing persons, any gift, payment or other thing of value of any kind whatsoever (i) for the purpose of influencing, directly or indirectly, any Government Official's acts or decisions or to induce any Government Official to use his/her influence to affect the official decision or actions of others in order to obtain, retain or direct business or to obtain any other improper advantage for SUBCONTRACTOR, any of SUBCONTRACTOR's Related Parties, CONTRACTOR or any of CONTRACTOR's affiliates or (ii) in furtherance of any act prohibited by the Anti-Corruption Laws or any other applicable Laws.

22.4.   Political Officials. With respect to contributions to Political Officials, SUBCONTRACTOR represents, warrants, covenants and agrees that neither SUBCONTRACTOR nor any of SUBCONTRACTOR's Related Parties will make any contributions that (i) are prohibited under any applicable Laws or (ii) are offers, payments, promises to pay or give, or authorizations for the payment or giving of any money, gift or other thing of value of any kind whatsoever to a Political Official in furtherance of any act prohibited by the Anti-Corruption Laws or any other applicable Laws.

22.5.   SUBCONTRACTOR Ownership. SUBCONTRACTOR hereby represents and warrants to CONTRACTOR that no Government Official holds, directly or indirectly, any ownership interest in SUBCONTRACTOR or any of SUBCONTRACTOR's Related Parties or in the contractual relationship established by this Agreement.

22.6.   Change in Ownership. SUBCONTRACTOR covenants and agrees that, in the event that during the term of the Agreement any Government Official acquires an interest of any kind whatsoever, direct or indirect, in SUBCONTRACTOR or any of SUBCONTRACTOR's Related Parties or in this Agreement, SUBCONTRATOR will make immediate, complete and accurate written

24

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

disclosure to CONTRACTOR thereof, and that following such disclosure, this Agreement shall immediately become terminable by CONTRACTOR upon written notice to SUBCONTRACTOR.

22.7.   No Cash Payments. SUBCONTRACTOR acknowledges that all payments to SUBCONTRACTOR or any of SUBCONTRACTOR's Related Parties under this Agreement shall be made only by check or wire transfer, and that none shall be made by cash or other negotiable instruments.

22.8.   Records. SUBCONTRACTOR shall (and shall cause its Related Parties to) keep and maintain accurate and complete books and records pertaining to its services performed hereunder and all transactions related thereto, and shall keep such books and records for at least four (4) years after the termination of this Agreement or any extensions thereof.

22.9.   Audit. SUBCONTRACTOR covenants and agrees that its books and records (and those of its Related Parties) shall be subject to audit or other review at reasonable times as CONTRACTOR or CONTRACTOR's affiliates, including Rowan Group, shall consider necessary to ensure compliance with the Anti-Corruption Laws and the provisions of this Article 22. CONTRACTOR's auditors shall have full and unrestricted access to all of SUBCONTRACTOR's and SUBCONTRACTOR's Related Parties' books and records with respect to:

a)   compliance with the provisions of the Agreement,

b)   the origin and legitimacy of any funds or disbursements paid on behalf of CONTRACTOR or to CONTRACTOR (including its employees) or otherwise in connection with this Agreement or any services or transactions performed or completed hereunder,

c)   all Work provided to CONTRACTOR or any of CONTRACTOR's affiliates, and

d)   all funds received from CONTRACTOR in connection with this Agreement.

Any refusal or non-cooperation by SUBCONTRACTOR in the conduct of any such audit or other review shall be cause for immediate termination of this Agreement by CONTRACTOR if this Agreement is then still in effect, and in the event of such termination, SUBCONTRACTOR shall receive no further compensation from CONTRACTOR after such termination unless and until SUBCONTRACTOR has fully cooperated with such audit or other review. In the event of any refusal or non-cooperation by SUBCONTRACTOR in the conduct of such audit or other review after this Agreement has expired or been terminated,

ROWAN 00108

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

CONTRACTOR shall thereafter have no further obligation to pay, and SUBCONTRACTOR shall thereafter have no right or entitlement to receive, any further compensation from CONTRACTOR after such refusal or non-cooperation, unless and until SUBCONTRACTOR has fully cooperated with such audit or other review.

22.10. Compliance with Laws. SUBCONTRACTOR agrees to comply with all applicable Laws and shall be responsible for obtaining any and all authorizations from any applicable governmental authority that may be required for SUBCONTRACTOR or any of SUBCONTRACTOR's Related Parties to perform the services hereunder. Without prejudice to the generality of the foregoing, SUBCONTRACTOR agrees that any personnel provided under this Agreement which are classified as "seafarers" under the Maritime Labour Convention of 2006 ("MLC2006") will be provided in compliance with the applicable provisions of the MLC2006.

22.11. Duty to Report. SUBCONTRACTOR agrees that should it learn or have reason to know of (i) any payment, offer, or agreement to make a payment to a Government Official in violation of this Article 22, or (ii) any other development during the term of this Agreement that in any way makes inaccurate or incomplete the representations, warranties and certifications of SUBCONTRACTOR or any of its Related Parties given hereunder relating to the Anti-Corruption Laws or any other applicable Laws, SUBCONTRACTOR will immediately advise CONTRACTOR in writing of such knowledge or suspicion.

22.12. Right of Investigation. If CONTRACTOR has a reasonable basis to believe that SUBCONTRACTOR or any of SUBCONTRACTOR's Related Parties has taken or failed to take any action that may subject CONTRACTOR or any or CONTRACTOR's affiliates to liability under the Anti-Corruption Laws or any other applicable Laws, SUBCONTRACTOR agrees that CONTRACTOR shall have the right (but not the obligation) upon written notice to SUBCONTRACTOR, to conduct an investigation and audit of SUBCONTRACTOR and SUBCONTRACTOR's Related Parties to determine to CONTRACTOR's reasonable satisfaction whether any actions or failures to act on by SUBCONTRACTOR or any of SUBCONTRACTOR's Related Parties may subject CONTRACTOR or any of CONTRACTOR's affiliates to such liability. SUBCONTRACTOR covenants and agrees to, and to cause its Related Parties to, cooperate fully with such investigation.

22.13. Breach. In the event SUBCONTRACTOR or any of SUBCONTRACTOR's Related Parties breaches this Article, then SUBCONTRACTOR forfeits, waives

ROWAN 00109

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

and agrees to forever forego any rights to compensation of any kind whatsoever under this Agreement.

22.14. Early Termination, Indemnity. CONTRACTOR may terminate this Agreement (or any Purchase Order) in the event that CONTRACTOR determines, in its sole discretion exercised in good faith, that SUBCONTRACTOR or any of SUBCONTRACTOR's Related Parties has breached any of the representations, warranties, covenants or agreements set out in this Article 22 or in Article 23 below. SUBCONTRACTOR shall indemnify and hold CONTRACTOR and CONTRACTOR's Affiliates, and each of their respective directors, officers, employees and representatives harmless from and against any claims, costs, liabilities, obligations or damages any of them may incur as a result of any such breach.

22.15. Material Provision. SUBCONTRACTOR and CONTRACTOR agree that this Article 22 and Article 23 below are material provisions of this Agreement without which CONTRACTOR would not have entered into this Agreement.

22.16. Survival. The provisions of this Article 22 and Article 23 below shall survive termination, expiration or cancellation of this Agreement without limitation.

23. **CODE OF BUSINESS CONDUCT AND ETHICS:**

SUBCONTRACTOR hereby represents, warrants, covenants and agrees that it is has reviewed and understands Rowan's current Code of Business Conduct and Ethics, a copy of which is attached hereto as Exhibit A (such Code of Business Conduct and Ethics, and any subsequent amendments, versions or replacements thereof of which SUBCONTRACTOR is provided a copy, "Rowan's Code of Conduct"), and SUBCONTRACTOR, and each of SUBCONTRACTOR's Related Parties will, at all times while this Agreement remains in effect, comply with Rowan's Code of Conduct when performing any services for Rowan or any Rowan Affiliate, acting in any way for or on behalf of Rowan or any Rowan Affiliate or otherwise performing any of SUBCONTRACTOR's duties or obligations under this Agreement.

24. **TITLE AND RISK OF LOSS:**

The risk of loss and title with respect to the Goods (including transportation delays and losses) shall pass to CONTRACTOR upon delivery of the Goods by SUBCONTRACTOR to CONTRACTOR. No loss, injury or destruction of the Goods prior to their delivery to CONTRACTOR shall release SUBCONTRACTOR from any obligations with respect to the Goods, including without limitation, the obligation to timely deliver and replace the Goods. All materials, tools, designs, dies, fixtures, drawings, specifications and other property method of process owned or paid for or

27

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

agreed to be paid for by CONTRACTOR, shall be the property of CONTRACTOR subject to removal at any time without cause or expense to CONTRACTOR, all such to be identified and marked by SUBCONTRACTOR as CONTRACTOR's property, used only in performance of the Work,  treated as confidential material and covered by SUBCONTRACTOR at SUBCONTRACTOR'S expense by adequate liability, damage and fire insurance for replacement cost thereof.  SUBCONTRACTOR shall assume all risk of loss or damage to such property, maintain and repair such property prior to completion of the Work or final payment of the price.  SUBCONTRACTOR is to provide CONTRACTOR with inventories of all such property as CONTRACTOR may request.

25. **COUNTERPARTS; FACSIMILE SIGNATURES:**

This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original copy of this Agreement, but all of which, when taken together, shall be deemed to constitute one and the same agreement.  The Parties hereto may sign and deliver this Agreement by facsimile transmission or by electronic mail in "portable document format."  Each Party hereto agrees that the delivery of this Agreement by facsimile or by electronic mail in "portable document format" shall have the same force and effect as delivery of original signatures, and that each Party hereto may use such facsimile or electronic mail signatures as evidence of the execution and delivery of this Agreement by all Parties hereto to the same extent that an original signature could be used.

26. **ENTIRE AGREEMENT:**

This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any existing agreements between them whether oral or written.

**REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK**

ROWAN 00111

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

# EXHIBIT A

## Rowan Companies, Inc.

## Code of Business Conduct and Ethics

ROWAN 00112

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

**EXHIBIT B**

### Rowan Companies, Inc. & Subsidiaries
### State/Country of Incorporation
### (as of February 28, 2015)

| Co. Code | Company Name | Jurisdiction of Formation |
|---|---|---|
| 2042 | Rowan Companies plc | England and Wales |
| 1001 | Rowan Companies, Inc. | USA — Delaware |
| 1005 | Atlantic Maritime Services LLC (fka Atlantic Maritime Services, Inc.) | USA — Delaware (formerly Texas) |
| 2075 | *Indonesia PE* | Indonesia |
| 1013 | *Trinidad Branch Office* | Trinidad |
| 1012 | British American Offshore Limited | UK — England & Wales |
| 2095 | Caydrill Limited *(in liquidation)* | Cayman Islands |
| 2086 | Great White Shark Limited | Gibraltar |
| 2087 | Green Turtle Limited | Gibraltar |
| 2088 | Lionfish Luxembourg S.a r.l. | Luxembourg |
| 2068 | Manatee Limited | Malta |
| 2069 | Manta Ray Limited | Malta |
| 2013 | Marine Blue Limited | Gibraltar |
| 2006 | Ralph Coffman Cayman Limited (fka Rowan S116E#3, Inc.) | Cayman Islands |
| 2085 | Ralph Coffman Limited | Gibraltar |
| 2083 | Ralph Coffman Luxembourg S.à r.l. (fka Rowan Financement S.à r.l.) | Luxembourg |
| 2091 | *Tunisia Branch Office* | Tunisia |
| 2040 | RCI International, Inc. | Cayman Islands |
| 2060 | RD International Services Pte. Ltd. | Singapore |
| 1007 | RDC Arabia Drilling, Inc. | Cayman Islands |
| -- | *Bahrain Regional Office* | Bahrain |
| -- | *Saudi Arabia Branch Office* | Saudi Arabia |
| 1017 | RDC Drilling, Ltd. *(in liquidation)* | Bermuda |
| 2047 | RDC Holdings Luxembourg S.à r.l. | Luxembourg |
| 2049 | RDC Malta Limited (fka RDC (Gibraltar) Limited) | Malta |
| 1003 | RDC Marine, Inc. | USA — Texas |
| 2036 | RDC Offshore Luxembourg S.à r.l. | Luxembourg |
| 2043 | *Dubai Branch Office* | Dubai |
| 2050 | RDC Offshore Malta Limited (fka RDC Offshore (Gibraltar) Limited) | Malta |
| 2039 | Renaissance Cayman Limited (fka Rowan Cayman Holding Limited) | Cayman Islands |
| 2099 | Resolute Cayman Limited | Cayman Islands |
| 2041 | RoCal Cayman Limited (fka RCI Drilling International, Inc.) | Cayman Islands |
| 2002 | Rowan 240C#3, Inc. | Cayman Islands |
| 1006 | Rowan 350 Slot Rigs, Inc. (fka RDC Qatar, Inc.) | USA — Delaware |
| 1019 | Rowan Angola Limitada | Angola |
| 2014 | Rowan Austria GmbH | Austria |
| 2067 | Rowan California S.à r.l. | Luxembourg |
| 2003 | Rowan Cayman Limited | Cayman Islands |
| 2034 | Rowan Deepwater Drilling (Gibraltar) Limited | Gibraltar |
| -- | *Korea Liaison Office* | Korea |
| 2045 | Rowan do Brasil Serviços de Perfuração Ltda. | Brazil |
| 1018 | Rowan Drilling & Aviation (Netherlands) B.V. | The Netherlands |
| 2059 | Rowan Drilling Americas Limited *(in liquidation)* | England & Wales |
| -- | *Unregistered U.S. GOM Branch* | — |
| 1027 | Rowan Drilling Company, Inc. | USA — Texas |

ROWAN 00113

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

| 2033 | Rowan Drilling Cyprus Limited | Cyprus |
|------|-------------------------------|--------|
| 2010 | Rowan Drilling (Gibraltar) Limited | Gibraltar |
| 2054 | *Indonesia PE* | Indonesia |
| 2016 | Rowan Drilling Mexico S. de R.L. de C.V. (*in liquidation*) | Mexico |
| 2005 | Rowan Drilling (Trinidad) Limited | Cayman Islands |
| -- | *Trinidad Branch Office* | Trinidad |
| 2063 | Rowan Drilling Services Limited (fka Rowan Labor (Gibraltar) Limited | Gibraltar |
| 2035 | *Qatar Branch Office* | Qatar |
| 1011 | Rowan Drilling (U.K.) Limited | UK – Scotland |
| 2062 | Rowan Drilling US Limited | England & Wales |
| 2058 | *Unregistered U.S. GOM Branch* | -- |
| 1023 | Rowan Egypt Petroleum Services L.L.C. | Egypt |
| 1020 | Rowan Finance LLC | USA – Delaware |
| 2081 | Rowan Finanz S.à r.l. | Luxembourg |
| 2082 | *US Branch Office* | Delaware |
| 2079 | Rowan Finanzeieren S.à r.l. | Luxembourg |
| 2061 | Rowan Global Drilling Services Limited | Gibraltar |
| 2020 | Rowan Gorilla V (Gibraltar) Limited | Gibraltar |
| 2021 | Rowan Gorilla VII (Gibraltar) Limited | Gibraltar |
| 2048 | Rowan Holdings Luxembourg S.à r.l. | Luxembourg |
| 2057 | *US Branch Office* | USA – Delaware |
| 1002 | Rowan Marine Services, Inc. | USA – Texas |
| 2019 | Rowan Middle East, Inc. | Cayman Islands |
| -- | *Saudi Arabia Branch Office* | Saudi Arabia |
| 2052 | Rowan N-Class (Gibraltar) Limited | Gibraltar |
| 2055 | Rowan No. 1 Limited | England & Wales |
| 2056 | Rowan No. 2 Limited | England & Wales |
| 2018 | Rowan North Sea, Inc. | Cayman Islands |
| 2024 | Rowan Norway Limited (fka Rowan (Gibraltar) Limited) | Gibraltar |
| 2032 | *Norway Branch Office* | Norway |
| 2051 | Rowan Offshore (Gibraltar) Limited | Gibraltar |
| 2037 | Rowan Offshore Luxembourg S.à r.l. | Luxembourg |
| 2044 | *Dubai Branch Office* | Dubai |
| 1014 | Rowan Petroleum, Inc. | USA – Texas |
| 2066 | Rowan Relentless Limited | Gibraltar |
| 2100 | Rowan Reliance Cayman Limited | Cayman Islands |
| 2065 | Rowan Reliance Limited | Gibraltar |
| 2090 | Rowan Reliance Luxembourg S.à r.l. | Luxembourg |
| 2064 | Rowan Resolute Limited | Gibraltar |
| 2078 | Rowan Renaissance Luxembourg S.à r.l. | Luxembourg |
| 2089 | Rowan Resolute Luxembourg S.a r.l. | Luxembourg |
| 2015 | Rowan, S. de R.L. de C.V. | Mexico |
| 1024 | Rowan Services LLC | USA – Delaware |
| 2007 | Rowan S116E#4, Inc. | Cayman Islands |
| 2004 | Rowan U.K. Services Limited (*in liquidation*) | Cayman Islands |
| 2074 | Rowan (UK) Relentless Limited | England & Wales |
| 2094 | *Unregistered U.S. GOM Branch* | -- |
| 2073 | Rowan (UK) Reliance Limited | England & Wales |
| 2093 | *Unregistered U.S. GOM Branch* | -- |
| 2070 | Rowan (UK) Renaissance Limited | England & Wales |
| 2077 | *Spain Branch Office* | Canary Islands |
| 2076 | *Unregistered Namibia Ops* | -- |
| -- | Rowan UK Renaissance Onshore Limited | England & Wales |

ROWAN 00114

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

| 2071 | *Namibia Branch Office* | Namibia |
| 2072 | Rowan (UK) Resolute Limited | England & Wales |
| 2092 | *Unregistered U.S. GOM Branch* | -- |
| 2053 | Rowan US Holdings (Gibraltar) Limited | Gibraltar |
| 1009 | Rowandrill, Inc. | USA – Texas |
| 1022 | *Mexico Branch Office* | Mexico |
| 2022 | Rowandrill Labuan Limited | Labuan |
| 2023 | Rowandrill Malaysia Sdn. Bhd. | Malaysia |
| 2017 | Rowandrill, S. de R.L. de C.V. (*in liquidation*) | Mexico |
| 2027 | SKDP 1 Limited | Cyprus |
| 2028 | SKDP 2 Limited | Cyprus |
| 2029 | SKDP 3 Limited | Cyprus |

ROWAN 00115

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

## EXHIBIT C

### SUBCONTRACTOR'S INSURANCE

SUBCONTRACTOR shall carry the following insurance coverages, at SUBCONTRACTOR's expense, with an insurance company or companies reasonably satisfactory to Rowan and authorized to do business in the state or country where the Work is performed.

1.  Workmen's Compensation Insurance and Employer's Liability Insurance (or equivalent in the jurisdiction in which the work is to be performed) covering all of SUBCONTRACTOR's employees with minimum limits of $1,000,000 each accident and/or statutory local requirements. Such insurance shall contain an "In Rem" endorsement and a Borrowed Servant/Alternate Employer endorsement.

2.  Comprehensive General Liability Insurance with minimum limits of $1,000,000 per occurrence combined single limit for bodily injury, property damage, pollution, premises/operations, independent contractors, blanket contractual liability and products/completed operations coverage. Such insurance shall also contain an "In Rem" endorsement and shall delete Watercraft Exclusion.

3.  Automobile Liability Insurance extended to owned, non-owned and hired vehicles with a $1,000,000 combined single limit of liability each accident for bodily injury and/or property.

4.  If applicable, United States Longshore and Harbor Workers Compensation Act coverage with Outer Continental Shelf Lands Act Extension and Maritime Insurance with minimum limits of $1,000,000 each person/$1,000,000 each accident, including coverage for transportation, wages, maintenance and cure. Such insurance shall contain an "In Rem" endorsement and a Borrowed Servant/Alternate Employer endorsement.

5.  If SUBCONTRACTOR rents or leases marine equipment and/or furnishes marine services hereunder, SUBCONTRACTOR in addition to all applicable insurance coverage provided above shall carry adequate Marine Protection and Indemnity Insurance with a limit of not less than $1,000,000 or equivalent Comprehensive General Liability Insurance with Watercraft Exclusion deleted. Such insurance shall be endorsed to include Contractual Liability coverage covering the vessel and equipment used. Such insurance shall delete policy language which limits coverage in the event that any Limitation of Liability Statute applies in respect of any Additional Insured, and shall delete any "as Owner" clauses. Such insurance shall also contain a Borrowed Servant/Alternate Employer endorsement and a Severability of Interest endorsement.

6.  If SUBCONTRACTOR uses equipment, tools, machinery, appliances, materials or supplies in the performance of services, SUBCONTRACTOR agrees to insure such property for the full replacement value and for loss of use, and SUBCONTRACTOR agrees to waive subrogation against ROWAN GROUP and to obtain a waiver of subrogation from its insurers in favor of ROWAN GROUP.

ROWAN 00116

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

7. If applicable, All Risk Hull and Machinery insurance in such amounts and against such risks as SUBCONTRACTOR deems adequate to fully compensate it for loss of or damage to said property, and in the event of loss of or damage to such property, SUBCONTRACTOR shall look to its insurance carrier for payment of such loss or damage and hereby releases ROWAN GROUP and waives any claim for the loss of or damage to such property that is in excess of any sum SUBCONTRACTOR may receive from its insurance carrier because of such loss or damage. Such insurance shall delete policy language which limits coverage in the event that any Limitation of Liability Statute applies in respect of any Additional Insured, and shall contain Broad Form Removal of Wreck and Debris, including Contractual, to the extent not provided under the Protection and Indemnity coverage. SUBCONTRACTOR shall not use any vessel in the performance of Work for ROWAN GROUP at any time unless said vessel is adequately covered by insurance, as herein provided, and is operated within the navigation limits of the insurance policies applicable thereto.

8. Excess Liability coverage over that required above with minimum limits of $10,000,000.

ROWAN 00117

DocuSign Envelope ID: 81C45B2B-CD4E-4233-81CA-14F00D072FC9

Noelle Kuehn
Mark III Systems, Inc
IBM PREMIER BUSINESS PARTNER
3600 S. Gessner #170
Houston, Texas 77063
Phone 713-664-9850
Fax 713-664-9860
Cell 281-236-6228

## Mark III Systems

| Rowan | | | Date | 5/22/2015 |
|---|---|---|---|---|
| Description | | | | Cost |
| | | | | |
| v3700 Storage - 3 years 24x7 | | | $ | 44,220.00 |
| x240 Nodes - Each w/20 cores, 384GB memory, 3 years 24x7 | | | $ | 22,522.00 |
| | | | | |
| | | TOTAL | $ | 66,742.00 |



## Certificate Of Completion

Envelope Number: 81C45B2BCD4E423361CA14F00D072FC9
Subject: CW2219646 - Signature for Petrus Oil and Gas Ltd Master Service Agreement.pdf
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 36 | Signatures: 2 | Status: Completed |
| Certificate Pages: 4 | Initials: 0 | |
| AutoNav: Enabled | | Envelope Originator: |
| EnvelopeId Stamping: Enabled | | Abigail Jiminez |
| | | abijim@rowancompanies.com |
| | | IP Address: 216.109.111.90 |

## Record Tracking

Status: Original
Jul 21, 2015 | 09:25 CT

Holder: Abigail Jiminez
abijim@rowancompanies.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Mathew Owen | DocuSigned by: Mathew Owen —A42D3A66A86428... | Sent: Jul 21, 2015 | 10:12 CT |
| mathew.owen@petrustech.com | | Viewed: Jul 28, 2015 | 01:26 CT |
| Mr | | Signed: Jul 28, 2015 | 01:27 CT |
| Security Level: Email, Account Authentication (None) | Using IP Address: 81.140.32.53 | |

Electronic Record and Signature Disclosure:
Accepted: Jul 28, 2015 | 01:26 CT
ID: 854660a9-18ce-476b-8a52-d706fd3b8d20

| | | |
|---|---|---|
| Brent Shinall | DocuSigned by: Brent Shinall —b077454482FAAA... | Sent: Jul 28, 2015 | 01:27 CT |
| breshi@rowancompanies.com | | Viewed: Jul 28, 2015 | 05:39 CT |
| VP Supply Chain Management | | Signed: Jul 28, 2015 | 05:39 CT |
| Security Level: Email, Account Authentication (None) | Using IP Address: 38.110.220.36 | |

Electronic Record and Signature Disclosure:
Accepted: Jul 28, 2015 | 05:39 CT
ID: 107a19b1-d90d-48c5-966c-211bc0e9964e

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | Jul 28, 2015 | 01:27 CT |
| Certified Delivered | Security Checked | Jul 28, 2015 | 05:39 CT |
| Signing Complete | Security Checked | Jul 28, 2015 | 05:39 CT |
| Completed | Security Checked | Jul 28, 2015 | 05:39 CT |

**Electronic Record and Signature Disclosure**

ROWAN 00119

Electronic Record and Signature Disclosure created on: 6/1/2015 8:58:37 PM
Parties agreed to: Mathew Owen, Brent Shinall

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Rowan Companies (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' button at the bottom of this document.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

ROWAN 00120

**How to contact Rowan Companies:**
You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
 To contact us by email send messages to: timkel@rowancompanies.com

**To advise Rowan Companies of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at timkel@rowancompanies.com and in the body of such request you must state: your previous e-mail address, your new e-mail address.  We do not require any other information from you to change your email address..
In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.

**To request paper copies from Rowan Companies**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to timkel@rowancompanies.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Rowan Companies**
To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

> i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
> ii. send us an e-mail to timkel@rowancompanies.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows2000? or WindowsXP? |
|---|---|
| Browsers (for SENDERS): | Internet Explorer 6.0? or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0?, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | •Allow per session cookies<br><br>•Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.

ROWAN 00121

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.

By checking the 'I Agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC RECORD AND SIGNATURE DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Rowan Companies as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Rowan Companies during the course of my relationship with you.

DocuSign Envelope ID: 47423412-04AD-4BCC-AEED-E6D61E8E6DD1

## Amendment No. 1

This Amendment No.1 ("Amendment") is entered on the 28th day of June, 2016 by and between Petrus Oil and Gas Limited (hereinafter referred to as "SUBCONTRACTOR") and Rowan Companies, Inc. (hereinafter referred to as "CONTRACTOR"). Each hereafter may be referred to individually as a "Party" and collectively as "Parties".

**WHEREAS,** CONTRACTOR and SUBCONTRACTOR entered into a Master Service Agreement on July 21, 2015 (the "Agreement") so that SUBCONTRACTOR could provide CONTRACTOR with certain Goods and/or Services; and

**WHEREAS,** SUBCONTRACTOR, on March 7, 2016 begun operating under the entity name of P-Tech Energy Ltd, and on May 17, 2016 begun operating under the new entity name Stowen Ltd; and

**WHEREAS,** the Parties now wishes to amend the Agreement so that SUBCONTRACTOR's correct name is substituted for the name currently used in the Agreement; and

**NOW THEREFORE,** CONTRACTOR and SUBCONTRACTOR, each in consideration of the promises and agreements contained herein agree as follows:

1. Effective May 17, 2016, all references to Petrus Oil and Gas Limited in the Agreement shall be replaced with Stowen Ltd.

2. Except as expressly modified by this Amendment, the Agreement shall remain in full force and effect in accordance with its respective terms and provisions, and the Agreement, as amended by this Amendment is hereby ratified and confirmed in all respects.

3. This Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original copy of this Amendment, but all of which, when taken together, shall be deemed to constitute one and the same Agreement. The Parties hereto may sign and deliver this Amendment by facsimile transmission or by electronic mail in "portable document format." Each Party hereto agrees that the delivery of this Amendment by facsimile or by electronic mail in "portable document format" shall have the same force and effect as delivery of original signatures, and that each Party hereto may use such facsimile or electronic mail signatures as evidence of the execution and delivery of this Amendment by all Parties hereto to the same extent that an original signature could be used.

IN WITNESS WHEREOF, the Parties have duly executed this Amendment as of the date first written above.

ROWAN 00123

DocuSign Envelope ID: 47423412-04AD-4BCC-AEED-E6D61E8E6DD1

AGREED AND ACCEPTED:

**STOWEN LTD**

By: Mathew Owen
AA2D2A465A95425...

Name: Mathew Owen

Title: Mr

**ROWAN COMPANIES, INC.**

By: Marty Fitzgerald
2F6AE9C820F54C8...

Name: Marty Fitzgerald

Title: VP SUPPLY CHAIN

2

ROWAN 00124



## Certificate Of Completion

Envelope Id: 4742341204AD4BCCAEEDE6D61E8E6DD1
Subject: CW2225616 - Stowen Ltd Amendment 1.pdf
Source Envelope:
Document Pages: 2                           Signatures: 2
Certificate Pages: 4                        Initials: 0
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-06:00) Central Time (US & Canada)

Status: Completed

Envelope Originator:
Abigail Jiminez
abijim@rowancompanies.com
IP Address: 216.109.111.170

## Record Tracking

Status: Original
    Jun 28, 2016 | 10:13

Holder: Abigail Jiminez
    abijim@rowancompanies.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Mathew Owen<br>mathew.owen@petrustech.com<br>Mr<br>Security Level: Email, Account Authentication (None) | *Mathew Owen*<br>AA2D2A46BA8542S...<br><br>Using IP Address: 207.70.139.11 | Sent: Jun 28, 2016 | 10:14<br>Viewed: Jun 28, 2016 | 10:17<br>Signed: Jun 28, 2016 | 10:17 |
| Electronic Record and Signature Disclosure:<br>  Not Offered via DocuSign<br>  ID: | | |
| Marty Fitzgerald<br>marfit@rowancompanies.com<br>VP SUPPLY CHAIN<br>VP, Supply Chain<br>Security Level: Email, Account Authentication (None) | *Marty Fitzgerald*<br>3F6AE9C820F54C5...<br><br>Using IP Address: 66.17.180.247 | Sent: Jun 28, 2016 | 10:17<br>Viewed: Jul 5, 2016 | 08:50<br>Signed: Jul 5, 2016 | 08:57 |
| Electronic Record and Signature Disclosure:<br>  Accepted: Aug 14, 2015 | 08:06<br>  ID: f23b0a53-93d9-44c0-9435-ace807903290 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | Jun 28, 2016 | 10:17 |
| Certified Delivered | Security Checked | Jul 5, 2016 | 08:50 |
| Signing Complete | Security Checked | Jul 5, 2016 | 08:57 |
| Completed | Security Checked | Jul 5, 2016 | 08:57 |

## Electronic Record and Signature Disclosure

Electronic Record and Signature Disclosure created on: 6/1/2015 8:58:37 PM
Parties agreed to: Marty Fitzgerald

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Rowan Companies (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' button at the bottom of this document.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

ROWAN 00126

**How to contact Rowan Companies:**
You may contact us to let us know of your changes as to how we may contact you electronically,
to request paper copies of certain information from us, and to withdraw your prior consent to
receive notices and disclosures electronically as follows:
 To contact us by email send messages to: timkel@rowancompanies.com

**To advise Rowan Companies of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures
electronically to you, you must send an email message to us at timkel@rowancompanies.com
and in the body of such request you must state: your previous e-mail address, your new e-mail
address. We do not require any other information from you to change your email address..
In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected
in your DocuSign account by following the process for changing e-mail in DocuSign.

**To request paper copies from Rowan Companies**
To request delivery from us of paper copies of the notices and disclosures previously provided
by us to you electronically, you must send us an e-mail to timkel@rowancompanies.com and in
the body of such request you must state your e-mail address, full name, US Postal address, and
telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Rowan Companies**
To inform us that you no longer want to receive future notices and disclosures in electronic
format you may:

　　i. decline to sign a document from within your DocuSign account, and on the subsequent
　　page, select the check-box indicating you wish to withdraw your consent, or you may;
　　ii. send us an e-mail to timkel@rowancompanies.com and in the body of such request you
　　must state your e-mail, full name, IS Postal Address, telephone number, and account
　　number. We do not need any other information from you to withdraw consent.. The
　　consequences of your withdrawing consent for online documents will be that transactions
　　may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows2000? or WindowsXP? |
|---|---|
| Browsers (for SENDERS): | Internet Explorer 6.0? or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0?, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | •Allow per session cookies  •Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will
provide you with an email message at the email address we have on file for you at that time
providing you with the revised hardware and software requirements, at which time you will
have the right to withdraw your consent.

ROWAN 00127

**Acknowledging your access and consent to receive materials electronically**
To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.
By checking the 'I Agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC RECORD AND SIGNATURE DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Rowan Companies as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Rowan Companies during the course of my relationship with you.

# ROWAN DRILLING (U.K.) LTD.
## (COMPANY)
## Purchase Order

Please ensure invoice is submitted and addressed per below.

ROWAN DRILLING (U.K.) LTD.
2800 Post Oak Blvd
Suite 5450
Houston TX 77056. Attention Accounts Payable

invoices@rowancompanies.com

**PO Number:** 4500371942
**Revision:** 0
**Date:** 03/30/2018
**Page:** 1 Of 7

| Your Vendor number | Requisition Number | Buyer Email: marka@rowancompanies.com | Buyer Telephone 2242165565 | Buyer Mark Allen |
|---|---|---|---|---|
| 2017710 | | | | |

| Purchasing Contract | Final Material Destination | Rig Number 0049 |
|---|---|---|
| | United Kingdom | Gorilla VII |

Payment Terms: Payment shall be 45 days from receipt of invoice

| Vendor Address | Ship To Address |
|---|---|
| STOWEN LTD GAPTON HALL INDUSTRIAL ESTATE UNIT 1 JAMES WATT CLOSE GREAT YARMOUTH NK NR31 0NX GB | Rowan Drilling (U.K) Limited AB12 3HT GB |

Header Memo
Document Ref No.RWN-TCP-XVII-12-233

| Item | Material | Description | Quantity | Unit | Unit Price | Delivery Date |
|---|---|---|---|---|---|---|
| 00001 | | MODS TO FESTOON HANGER | 1 | AU | 199831.00 | 05/11/2018 |
| | | Expected value not to exceed      199,831.00 | | | | |
| | | based on Rowan supplied information <|>&<|> drawing R049-320-43 Rev0 and | | | | |
| | | Stowen onsite survey | | | | |
| | | | | | | |
| | | Structural / Piping | | | | |
| | | | | | | |
| | | Modify pipe line clashes with new transverse run way beam. | | | | |
| | | Fabricate <|>&<|> install missing section of transverse access platform. | | | | |
| | | Modify <|>&<|> install the FWD 1no cantilever fixed in position turtle | | | | |
| | | back. Install new DNV approved deck penetration for new festoon cables. | | | | |
| | | Modify <|>&<|> install AFT cantilever cross over to transverse festoon | | | | |
| | | hanger. | | | | |
| | | Install third party supplied materials for drawing R049-320-43 Rev0. | | | | |
| | | | | | | |
| | | Material Supply | | | | |
| | | | | | | |
| | | Supply materials for piping clash points with new transverse run way | | | | |
| | | beam. | | | | |
| | | Supply of materials for missing section of transverse access platform. | | | | |
| | | Supply materials and complete modification <|>&<|> installation to the | | | | |
| | | FWD 1no cantilever turtle back. | | | | |
| | | Supply fabricated DNV approved deck penetration for new festoon cables | | | | |
| | | and install. | | | | |
| | | Supply materials for modification to AFT cantilever cross over to | | | | |
| | | transverse festoon hanger | | | | |
| | | Supply of welding consumables and complete installation of third party | | | | |
| | | supplied materials for drawing R049-320-43 Rev0. | | | | |
| | | | | | | |
| | | Consumables. | | | | |
| | | | | | | |
| | | 4 Fliarc 76S 2.5mm E7018 Electrode - £173.00 | | | | |
| | | 8 Fliarc 76S 3.25mm E7018 Electrode - £167.00 | | | | |
| | | 2 Fliarc 76S 4mm E7018 Electrode - £185.00. | | | | |

| Terms of Delivery: SVC | Total Net Value | 199,831.00 | Currency GBP |
|---|---|---|---|

# ROWAN DRILLING (U.K.) LTD.
## (COMPANY)
## Purchase Order

Please ensure invoice is submitted and addressed per below
ROWAN DRILLING (U.K.) LTD.
2800 Post Oak Blvd
Suite 5450
Houston TX 77056. Attention Accounts Payable

invoices@rowancompanies.com

**PO Number:** 4500371942
Revision: 0
Date: 03/30/2018
Page: 2 Of 7

| Your Vendor number | Requisition Number | | Buyer Email:<br>marka@rowancompanies.com | Buyer Telephone<br>2242165565 | Buyer<br>Mark Allen |
|---|---|---|---|---|---|
| 2017710 | | | | | |

| Purchasing Contract | Final Material Destination | Rig Number 0049 |
|---|---|---|
| | United Kingdom | Gorilla VII |

Payment Terms: Payment shall be 45 days from receipt of invoice

**Vendor Address**
STOWEN LTD
GAPTON HALL INDUSTRIAL ESTATE
UNIT 1 JAMES WATT CLOSE
GREAT YARMOUTH NK NR31 0NX
GB

**Ship To Address**
Rowan Drilling (U K) Limited
AB12 3HT GB

| Item | Material | Description | Quantity | Unit | Unit Price | Delivery Date |
|---|---|---|---|---|---|---|
| | | 4 11mx50m Roll Heavy Duty Fire Blanket 312.00 | | | | |
| | | Electrical | | | | |
| | | Supply and installation of poly coated S/S banding | | | | |
| | | Equipment and materials | | | | |
| | | Unless explicitly stated per item. All equipment and materials are offered ex works Great Yarmouth (UK) and any transport required will be recharged at cost plus 10% | | | | |
| | | Personnel | | | | |
| | | Stowen propose to supply the below personnel to work day <|>&<|> night shift | | | | |
| | | 2 x Construction Supervisors @ £540.00 Each per day<br>2 x Multi Skilled L3 Rig Builder @ £510.00 Each per day<br>8 x Multi-Skilled Rig Builders @ £485.00 Each per day<br>3 x Pipe Fitters @ £485.00 Each per day<br>1 x NDT Inspector @ £485.00 Each per day<br>12 x Electrical Techs @ £515.00 Each per day | | | | |
| | | Travel, Transport, Subsistence and Exclusions | | | | |
| | | Personnel<br>All rates based on a 12-hour day, overtime will be charged pro-rata<br>Personnel charges for Mob and Demob will be at the above-mentioned rates.<br>Mob and Demob to the rig will be subject to a £75.00 charge per man each way.<br>All flights and long distance travel will be at cost plus 10%<br>Any overnight accommodation required for reasons out with our control such as weather delays, lack of bed space, client request, early check in etc. will be recharged at cost plus | | | | |

| | Total Net Value | 199,831.00 | Currency GBP |
|---|---|---|---|

Terms of Delivery: SVC

# ROWAN DRILLING (U.K.) LTD.
## (COMPANY)
## Purchase Order

Please ensure invoice is submitted and addressed per below
ROWAN DRILLING (U.K.) LTD.
2800 Post Oak Blvd
Suite 5450
Houston TX 77056. Attention Accounts Payable

invoices@rowancompanies.com

**PO Number:**
**4500371942**
Revision: 0

Date:03/30/2018
Page: 3 Of 7

| Your Vendor number | Requisition Number | | Buyer Email :<br>marka@rowancompanies.com | Buyer Telephone<br>2242165565 | Buyer<br>Mark Allen |
|---|---|---|---|---|---|
| 2017710 | | | | | |

| Purchasing Contract | Final Material Destination<br>United Kingdom | | Rig Number 0049<br>Gorilla VII | | |

Payment Terms: Payment shall be 45 days from receipt of invoice

Vendor Address
STOWEN LTD
GAPTON HALL INDUSTRIAL ESTATE
UNIT 1 JAMES WATT CLOSE
GREAT YARMOUTH NK NR31 0NX
GB

Ship To Address
Rowan Drilling (U K) Limited
AB12 3HT GB

| Item | Material | Description | Quantity | Unit | Unit Price | Delivery Date |
|---|---|---|---|---|---|---|
| | | Estimated Budget for festoon hanger | | | | |
| | | Piping £2,000.00 EST | | | | |
| | | Electrical (TBC)£2,000.00 EST | | | | |
| | | Consumables £3,646.00 | | | | |
| | | Structural Labour </>&</> NDT £73,000.00 | | | | |
| | | Project Leads and Supervision £40,000.00 | | | | |
| | | Piping Labour £10,185.00 | | | | |
| | | Electrical Labour £67,000.00 | | | | |
| | | Logistics cost + 10% £2,000.00 EST | | | | |
| | | | | | | |
| | | Total Estimate £199,831.00 | | | | |
| | | | | | | |
| | | Estimated Duration: Site Installation = 30 days | | | | |

| Terms of Delivery: SVC | Total Net Value | 199,831.00 | Currency GBP |
|---|---|---|---|

All equipment related documentation(Manuals,Data Books and Certifications) should be submitted to http://www.rowan.com/vendorrequipdoc. The site is password protected, and the password can be obtained by contacting the purchaser at the time of document submission.

To ensure timely processing of your invoices, please validate that the PO number, item#, pricing and quantities match the purchase order issued. Supporting documentation should accompany each invoice for audit purposes.
For inquiries, send emails to ap@rowancompanies.com

This Purchase Order shall be governed by Rowan Companies, Inc.'s terms and conditions which are attached hereto. In the event the Supplier attaches any additional and/or conflicting terms and conditions to this Purchase Order, or any other document applicable to this Purchase Order, such terms and conditions are hereby rejected and shall not govern this Purchase Order.
PLEASE MARK THE COUNTRY OF ORIGIN ON ALL MATERIAL.
**SHIPPING INSTRUCTIONS:**

The following information is required for each line item at the time of order from all suppliers to avoid potential customs delays:

HTS/Schedule B #

ECCN#/ITAR# (if applicable) or EAR99

ROWAN DRILLING (U.K.) LTD.
(COMPANY)
Purchase Order

| PO Number: |
| 4500371942 |
| Revision: 0 |
| Date:03/30/2018 |
| Page      4 Of 7 |

Please ensure invoice is submitted and addressed per below:
ROWAN DRILLING (U.K.) LTD.
2800 Post Oak Blvd
Suite 5450
Houston TX 77056: Attention Accounts Payable
invoices@rowancompanies.com

| Buyer |
| Mark Allen |

| Your Vendor number | Requisition Number | Buyer Email | Buyer Telephone |
| 2017710 | | marka@rowancompanies.com | 224216565 |

| Purchasing Contract | Final Material Destination | Rig Number 0049 | |
| | United Kingdom | Gorilla VII | |

Payment Terms: Payment shall be 45 days from receipt of invoice

Vendor Address
STOWEN LTD
GAPTON HALL INDUSTRIAL ESTATE
UNIT 1 JAMES WATT CLOSE
GREAT YARMOUTH NK NR31 0NX
GB

Ship To Address
Rowan Drilling (U.K) Limited
AB12 3HT GB

Country of Origin Certificate with markings on all material
Tax ID Number
MSDS & HAZMAT Information UN/NA number with Packaging class (if applicable)
Individual weight for each line item
ALL suppliers are required to advise if any of the goods being shipped require an export license.

# TERMS AND CONDITIONS OF PURCHASE ORDER

## THESE TERMS AND, CONDITIONS CONTAIN PROVISIONS RELATING TO DEFENSE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK

### PLEASE CONSULT AN ATTORNEY FOR ADVICE

**1. Entire Agreement**

1.1 In the event a member of the ROWAN GROUP seeks the purchase or rental of materials, equipment and/or services from a member of the CONTRACTOR GROUP, the applicable member of the ROWAN GROUP shall issue a purchase order to this applicable member of the CONTRACTOR GROUP with the material terms and conditions of such purchase or rental (each such purchase order or other written document is referred to herein as the "PURCHASE ORDER", and all such materials, equipment and/or services subject to the PURCHASE ORDER are referred to herein as the "GOODS".)

1.2 These Terms and Conditions of Purchase Order (the "T&C's") together with the applicable PURCHASE ORDER, are collectively referred to herein as the "AGREEMENT" and shall:

(a) exclusively govern and control all GOODS provided by CONTRACTOR to ROWAN;

(b) apply regardless of whether the T&Cs and/or the PURCHASE ORDER are signed by CONTRACTOR and/or ROWAN; and

(c) control the provision of all GOODS in the event CONTRACTOR and ROWAN.

1.3 Notwithstanding the above and to the avoidance of doubt, in the event CONTRACTOR and ROWAN have executed a document entitled "Master Service Agreement", such Master Service Agreement will govern and control the provision of all GOODS provided by CONTRACTOR to ROWAN. Notwithstanding the above and for the avoidance of doubt, in the event the terms of a Mutual Hold Harmless Agreement, executed by and between CONTRACTOR and ROWAN, conflict with this PURCHASE ORDER, such Mutual Hold Harmless Agreement will govern.

**2. Definitions**

2.1 "AFFILIATE" or "AFFILIATES" means a company or other legal entity which controls or is controlled by, or is under common control with another entity. For purposes hereof, "controls" or "controlled by" or "common control" means the ownership, directly or indirectly, of fifty percent (50%) or more of the shares or voting rights in a company or other legal entity. With respect to ROWAN only "AFFILIATE" or "AFFILIATES" shall also mean any company or other legal entity in which ROWAN or its AFFILIATES owns more than ten percent (10%) but less than fifty percent (50%) of the shares or voting rights.

2.2 "CLAIM" or "CLAIMS" mean all lawsuits, claims, damages (including exemplary or punitive damages), contractual defense and indemnity obligations owed to others (including, but not limited to, those obligations owed by ROWAN to any of its customers), contractual liability, fines, penalties, demands, causes of action, losses and/or any character including, but not limited to, reasonable attorney's fees, costs, and investigative and litigation expenses.

2.3 "CONTRACTOR" shall mean the entity or individual providing the GOODS to ROWAN.

2.4 "CONTRACTOR GROUP" shall mean (a) CONTRACTOR, (b) its AFFILIATES, and (c) each of their respective officers, directors, employees, shareholders and insurers.

2.5 "GOODS" shall be understood to mean the property and shall mean every form of loss or damage to property including any pre-existing condition, defect or ruin of or consequential damages or losses; loss of production; loss of profit, loss of use, loss of revenue, profit, or anticipated revenue or profit; economic loss; loss of business opportunities, and overhead costs.

2.6 "ROWAN" shall be understood to be all inclusive and shall mean every form of loss of liability whatsoever including, but not limited to, conditions or premises of property (including any pre-existing condition, defect or ruin of or consequential damages or losses) as otherwise determined by applicable law.

2.7 "ROWAN GROUP" shall mean: (a) ROWAN, (b) its AFFILIATES, and (c) each of their respective officers, directors, employees, shareholders and insurers.

**3. Governing Law/Venue**

3.1 The interpretation, construction and effect of the AGREEMENT, and all rights and obligations of the Parties arising thereunder, shall be governed exclusively by the General Maritime Law of the United States (not including, however, any of its conflicts of law rules which would direct or refer to the laws of another jurisdiction), and to the extent such law is not applicable, then by the laws of the State of Texas. ROWAN and CONTRACTOR hereby submit to the exclusive jurisdiction of the state and federal courts of Harris County, Texas and waive any right whereby they might be entitled to submit any dispute hereunder to the courts of another county, parish, state or country.

**4. Compensation**

4.1 The amount of compensation payable by ROWAN to CONTRACTOR shall be specified in the applicable PURCHASE ORDER. With respect to undisputed charges, ROWAN shall pay CONTRACTOR within forty-five (45) days of its receipt of invoice. In the event ROWAN disputes an invoice, ROWAN may delay payment of the disputed portion until resolution of the dispute.

4.2 Payment of any invoice shall not prejudice the right of ROWAN to hereinafter conduct an audit of CONTRACTOR's books and records or otherwise question the propriety of any charges relating to a PURCHASE ORDER.

4.3 In the event that an audit reveals that CONTRACTOR overcharged ROWAN within one hundred and twenty (120) days following delivery of the GOODS, ROWAN, in its sole discretion, may deem any such invoice null and void, and CONTRACTOR hereby agrees to waive any claim relating to such invoice or GOODS.

**5. Delivery**

5.1 Time is of the essence in this AGREEMENT.

5.2 GOODS shall be delivered by the delivery date(s) and in accordance with the terms of delivery stated on the PURCHASE ORDER. In the event a delivery term is not indicated on the PURCHASE ORDER, all GOODS shall be delivered FCA the delivery destinations designated by ROWAN per Incoterms 2010.

5.3 The risk of loss and title with respect to the GOODS (including transportation delays and losses) shall pass to ROWAN upon delivery of the GOODS by CONTRACTOR to ROWAN. No loss, injury or destruction of the GOODS prior to their delivery to ROWAN shall relieve CONTRACTOR, in whole or in part, of any portion of the PURCHASE ORDER. If CONTRACTOR has failed to make any delivery according to delivery schedule (regardless of the reason), ROWAN shall have the right to cancel all or any portion of the PURCHASE ORDER.

5.4 Notwithstanding the foregoing, CONTRACTOR shall be responsible for all costs, damages and liabilities suffered or incurred by ROWAN as the result of CONTRACTOR's failure to deliver on time including, but not limited to, any liability, damage or penalty to which ROWAN may be subject under any contract which provides for liquidated damages.

**6. Inspection**

6.1 All GOODS shall be subject to inspection, testing, and approval by ROWAN at any and all times and places designated by ROWAN.

6.2 CONTRACTOR shall not be relieved by any inspection, test, approval and/or acceptance of any of the GOODS of its unusual obligation to furnish such GOODS in strict accordance with the requirements of this AGREEMENT.

6.3 The foregoing right and any inspections pursuant thereto shall not relieve CONTRACTOR of its obligation to conduct full and adequate tests and inspections of the GOODS and to furnish GOODS which conform to the contractual requirements and are free from defect.

6.4 In the event that the GOODS fail any such inspection, CONTRACTOR shall correct any and all defects to the satisfaction of ROWAN.

6.5 CONTRACTOR shall provide and maintain during the term of this AGREEMENT a complete quality assurance system and a quality assurance program covering all phases of GOODS to be provided to ROWAN.

**7. Warranties**

7.1 CONTRACTOR shall provide all GOODS with due diligence, in a good and workmanlike manner, and using skilled, competent and experienced workmen and supervisors. All GOODS furnished by CONTRACTOR shall be of the best quality for their respective purposes and shall be free from defects. CONTRACTOR shall promptly remove, replace and/or correct any portion of the GOODS found defective or unsuitable by ROWAN and regardless of whether such defect or unsuitability is discovered prior to or after delivery of the GOODS. These warranties are in addition to any warranties which may be specified in a PURCHASE ORDER or which may be implied by law.

7.2 CONTRACTOR further agrees that any and all warranties shall survive delivery, inspection, test, acceptance and payment of the GOODS and shall run to and be for the benefit of both ROWAN and its successors, assigns, customers and users of the GOODS.

7.3 CONTRACTOR agrees to release, defend, indemnify, and hold harmless ROWAN GROUP (including without limitation their successors, assigns, customers and users of the GOODS) from and against all CLAIMS that may be suffered as a result of any breach of warranty.

**8. Insurance**

8.1 At all times during the term of the AGREEMENT, CONTRACTOR shall carry the following types of insurance:

(a) Workmen's Compensation and Employer's Liability including Alternate Employer/Borrowed Servant and if applicable, USL&H, OCSLA, Maritime extension (including TWMAC) and "In Rem";

(b) Comprehensive General Liability with a limit of not less than $1,000,000 per occurrence;

(c) Excess Liability with a limit of not less than $10,000,000 per occurrence.

8.2 With respect to such insurance policies carried by CONTRACTOR, ROWAN shall be named as an additional assured except with respect to Workers Compensation, and provided with a waiver of subrogation, and all of CONTRACTOR's insurance shall be primary.

8.3 The Parties agree that the purpose of the insurance coverages required hereunder is to provide appropriate support for the indemnity obligations expressly assumed by CONTRACTOR. CONTRACTOR's insurance obligations hereunder shall not be construed to waive or limit in any way the indemnity obligations assumed hereunder. In the event the scope of the insurance obligations hereunder exceeds in any way the indemnity obligations as set out in the AGREEMENT, CONTRACTOR's insurance shall be provided to the extent of the greater obligation. All premium, deductibles and/or self-retained retentions are solely for CONTRACTOR's account.

8.4 CONTRACTOR shall provide a certificate of insurance evidencing the insurance required by the AGREEMENT and providing ROWAN with at least thirty days notice of cancellation or material change.

9   **Indemnity and Release**

9.1   ROWAN and CONTRACTOR recognize and agree that it is in each of their best interests that certain risks should be identified and allocated as between them. Accordingly, the release, defense and indemnity provisions of this AGREEMENT shall be literally construed to effectuate that intent, and there shall be no strict construction against such provisions. The obligations set forth in this Article apply in addition to all other indemnity obligations set forth in the AGREEMENT and do not displace such other indemnity obligations.

9.2   CONTRACTOR agrees to release, defend, protect, indemnify and hold ROWAN GROUP free and harmless from and against:

(a)   any and all CLAIMS on account of disease, illness, mental, emotional or physical/bodily injury and/or death to any member of CONTRACTOR GROUP or damage or loss to any property owned by or belonging to any member of CONTRACTOR GROUP; and

(b)   any and all CONSEQUENTIAL LOSS incurred by any member of CONTRACTOR GROUP;

arising out of, resulting from, connected to, or related in any way to the GOODS, the AGREEMENT or any acts or omissions in connection therewith, without limit and without regard to the FAULT nor alleged FAULT of ROWAN GROUP.

10   **Severability**

All terms contained herein are severable, and the invalidity of any part hereof shall not affect the validity of any other part. In the event any provision of the AGREEMENT is inconsistent with or contrary to any applicable law, rule, regulation or order, such provision shall be deemed to be modified to comply with the applicable law, rule, regulation or order, and so modified such provision and the AGREEMENT shall continue in full force and effect to the maximum extent permitted by law.

11   **Termination**

11.1   ROWAN shall have the right to terminate any PURCHASE ORDER in whole or in part, with or without cause, upon providing written notice to CONTRACTOR.

12   **Continuation**

In the event any provision of this AGREEMENT is contrary to any applicable law, such provision shall be deemed to be modified to the extent required to comply with such law, and so modified such provision and this AGREEMENT shall continue in full force and effect. If any of the terms and conditions of this AGREEMENT are held by any court to be invalid under the laws of any political body having jurisdiction over the subject matter hereof, such invalidity shall not invalidate the entire AGREEMENT, but instead the AGREEMENT shall be construed as if not containing the particular provision or provisions held to be invalid, and the remainder of the AGREEMENT shall be construed, interpreted and enforceable to the maximum extent permitted by law.

13   **Independent Contractor**

In the provision of any GOODS by CONTRACTOR for ROWAN, CONTRACTOR conclusively shall be deemed an independent contractor, with the authority and right to direct and control all of the details of the GOODS. ROWAN being interested only in the results obtained.

14   **Remedies**

The remedies herein reserved shall be cumulative and in addition to any other or further remedies provided by law or in equity.

15   **Ownership**

Upon delivery of the GOODS as provided in Section 5 above, ROWAN shall own all right, title, and interest in and to the GOODS provided by CONTRACTOR to ROWAN hereunder, including (if any) all software provided in connection with the GOODS and all copies of the software embedded or incorporated in the GOODS. For the avoidance of doubt, if for any reason ROWAN is not deemed the owner of any software associated with the GOODS, CONTRACTOR hereby grants to ROWAN a worldwide, perpetual, irrevocable, transferable, sublicensable, royalty-free license to use, modify, make derivative products from, and disclose that software in connection with ROWAN's exercise of its rights in the GOODS. For the further avoidance of doubt, ROWAN shall further own all data and other information generated by and with the GOODS and/or during the course of ROWAN's use of the GOODS, and ROWAN shall be free to (and CONTRACTOR hereby authorizes ROWAN to) use and access that data and other information without restriction, including by accessing any software or other aspects of the GOODS that communicate such data and other information.